RECEIVED
NOV - 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ALLEGRA D. HEMPHILL, *
*
Plaintiff *
*
vs. * Civil Action No. 1:07cv1236 **JDB**
*
KIMBERLY- CLARK CORPORATION * Judge John D. Bates
and *
*
PROCTER & GAMBLE COMPANY *
*
Defendant(s). *
*******************************************************************

**PLAINTIFF'S REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A HEARING**

Plaintiff Allegra Hemphill has moved this Court to Order a Hearing. Her Complaint for patent infringement is properly before Judge John D. Bates in the United States District Court for the District of Columbia against the defendants.[1] She is asserting the independent claim 2, in her United States Letters Patent 4,557,720 (the '720 Patent). Claim 2 is governed by federal patent law 35 U.S.C. §112, ¶6 which is mandatory.

It should be well understood, that a case for patent infringement has NOT been heard. Not at anytime, has the plaintiff- patentee been given an opportunity to show her claims are infringed. **The defendants do not have a patent** and they seek to *purposefully delay to avoid* these infringement proceedings. A hearing is necessary. The plaintiff-patentee should not be deprived of her opportunity to prove the claims are infringed.

[1]The Complaint and Summons were filed with the Clerk of Court on July 10, 2007.

The defendants have **no valid legal defense to ignore the federal law in claim 2.** Therefore, a more credible argument can be made, that the Court's previous claim construction should have allowed both the infringement and non-infringement issues, together, and at the same time. Yet, to accommodate corporate defendants, the previous claim construction in claim 1 focused only and solely on motions for non-infringement. This explains why the 1994 dictionary (extrinsic evidence) was consulted *instead of* focusing directly on the '720 Patent itself (intrinsic evidence). By doing this, the Maryland District Court Judge can offer no reason and no explanation as to 'why' there have been no hearings of any kind.[2]

We have proof the previous case was unfair and proof of the anomalous result is clear. Full and fair claim construction must *include* intrinsic evidence. Failure to consult the '720 patent and scrutinize the intrinsic evidence renders previous claim construction is not correct. Relevant issues in the Hemphill '720 patent have not yet been decided. It is for this reason, we still have ambiguity in the claims.

**FEDERAL LAW IN CLAIM 2 IS RELEVANT**

Despite everything the defendants say, the federal patent law **35 U.S.C. §112, ¶6 in claim 2 is mandatory** 'and **such claim** ***shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.'*** It is therefore, reasonable for this Court, to please *clarify* the previous term for ***a fairly rigid core member.*** It is a key issue for the Court to identify the structure as ***housing means*** in claim 2.

[2] Since March 9, 1999 to date, the Plaintiff has never seen the Maryland District Court Judge Deborah K. Chasanow and the plaintiff has never spoken with the district court judge –which is most unusual. The Defendants were allowed to bring their motions so that the case for patent infringement was never heard and the Complaint was not addressed.

In this way, we achieve definiteness for *"the swab"*.

Both the Court and the patentee *are compelled by law*, to include intrinsic evidence. The clarification is a simple matter of looking to the Hemphill '720 patent to see and compare the above terms *with the specification and prosecution history.* To understand the full scope in the patent claim, the Court looks no further than the '720 Patent, itself.

## CLAIM DIFFERENTIATION IS RELEVANT

The defendants have seriously affected the integrity of the normal process of adjudication, through their attorneys. The Maryland district court sought out the 1994 dictionary to accommodate non- infringement issues and did not follow proper procedure which reviews the 1985 patent first, to determine the infringement. For this reason, the prior decisions did not scrutinize the intrinsic evidence to define "the swab" as described in the '720 patent. *Acumed LLC v. Stryker Corp.* 483 F3d. 800, 814 (Fed. Cir. 2007). The prior decisions did not explain nor specify 'how rigid is a fairly rigid core member' which renders the previous construction insufficiently definite *Acumed.* At 806.

The prior decisions did not conduct a proper indefiniteness analysis which asks first whether the structure is described in the specification, and if so, whether one skilled in the art would identify the structure [housing means] from the description. See *Biomedino LLC v. Waters Techonologies Corp.* 490 F3d. 946, 952 (Fed. Cir. 2007). These patent issues have not been decided, but they must be addressed, so that the claim 2 is within its legitimate scope.

"The theory of the doctrine of equivalents is that an applicant through the doctrine of equivalents should only be able to protect the scope of [her] invention." *Festo Corporation v. Shoketsu Kinzoku Kabushiki Co. LTD* 493 F3d. 1368, 1379-1380 (Fed.

Cir. 2007).[3]

By their own admission, the Defendants already conceded to previous claim construction. They are now yielding to claim differentiation to agree with the plaintiff:

('[t]he doctrine of claim differentiation creates a presumption that each claim in a patent has a different scope. The two independent claims in the Hemphill '720 Patent do not have the same scope because there are several other differences between the claims') including

A. means plus function language in claim 2 not found in claim 1

B. claim 2 has two positions whereas, claim 1 has one position; and

C. the scope is different for a core member based on the structure and materials used, which provides *another manner* for interpreting the terms for a [vaginal] swab. (*quoting* Defendants' Response Brief at 2-3). The fact that the ('claims are presumed to differ in scope does not mean that every limitation must be distinguished from another claim *but only that at least one limitation must differ')* which **is**: the *means plus function* language in claim 2 and NOT found in claim 1 (*quoting* Defendants' Response Brief at 3).

> "Once the court concludes the claim limitation is a means-plus-function limitation in claim 2, **two steps of claim construction remain:** 1) the court must first identify the function of the limitation and 2) the court must then look to the specification and identify the corresponding structure for that function" See *Biomedino LLC v. Waters Techonologies Corp.* 490 F3d. 946, 947 (Fed. Cir. 2007).

---

[3] The previous claim construction sought to physically introduce "the swab" into the vaginal "canal" and the additional structure [stick or wire] was found in a 1994 dictionary:

> "[T]he Supreme Court does not limit the doctrine of equivalents "to equivalents that are disclosed within the patent itself, reasoning that the "proper time for evaluating equivalency....is at the time of infringement, not at the time the patent was issued." *Warner-Jenkinson* 117 S.Ct. 1040 *Festo Corp. v. Shoeketsu Kinzoku Kogyo Kabushiki* 234 F3d. 558 (Fed. Cir. 2000) 566.

For this reason, this Court is reminded that Federal Circuit Judges allow extrinsic evidence ***with the stipulation*** that "identical claim terms cannot be given a different meaning... **unless the patent clearly provides otherwise"** *quoting Georgia Pacific Corp. v. United States Gypsum Co.,* 195 F3d. 1322, 1331 (Fed. Cir. 1999). Therefore, it is noticeable that **there were no amendments made to the patent.** See Reexamination Certificate at App. 360A. In this way, the Hemphill '720 patent clearly provides another manner for interpreting the swab, and in other respects, clarifies a fairly rigid core member *based on materials used*.

**See Plaintiff's Exhibit. 1.**

**PRIOR ART IS RELEVANT TO OBTAIN DEFINITENESS IN THE CLAIMS**

No amendments were made to the patent. Failure to adjudicate the term found in the claims with the *specification and prosecution history* has resulted in incorrect claim construction. Here, even if we keep the same claim construction from one claim to another, it is inadequate if no one knows anything about the structure or materials used in the '720 patent. It is for this reason, we must establish definiteness for the patent claim. See Complaint at paragraph 12. In claim 2, we know the federal law is mandatory. The relevant law in claim 2 establishes a legal standard for this Court to identify the means plus function language in claim 2, and by doing this, we achieve definiteness for the swab and fairly rigid core member. Clearly, there should be no ambiguity in claim construction.

**CONCLUSION**: A hearing is necessary. A fair hearing should be granted.

Respectfully submitted,

Allegra Hemphill
/s/

Allegra Hemphill
4902 3rd Street NW
Washington, DC 20011
(240) 361 - 8699

**Certificate of Service:**
**By US Mail (Postage Paid), to:**

*Kimberly Clark Corporation*
Kramon & Graham, PA
One South Street, Suite 2600
Baltimore, Maryland 21202
attn. James Ulwick,
Aaron Raskas

*Procter & Gamble Corporation*
Jones Day
51 Louisiana Avenue NW
Washington, DC 20001
attn.: Blaney Harper

I hereby certify that on November 5th , 2007,
this document was caused to be served upon the parties named on this page at the addresses listed and by the means stated.

Allegra Hemphill
/s/

Allegra Hemphill

# PLAINTIFF'S

# EXHIBIT 1

**THE HEMPHILL '720 PATENT, ITSELF, PROVIDES ...**

The SWAB in claim 2 has **no limitations 'for use'.**
Claim 2 itself, does not read to human body parts.[1]
The '720 Patent teaches:

- "**the swab** 100 is comprised of a core 102 covered by a gauze layer 104" at Col. 5,ll. 29-31.
- "[A]bsorbent gauze material 104 is secured about the exterior surface of core 102...' at Col. 5, ll. 36-37.
- "[C]ore 102 is separately formed [from 110 outer container] so as to have a base formed as an annular band or ring 106" at Col. 5, ll. 32-33.




[1] "The way the consumer makes use of a vaginal swab is entirely up to them." See App. 297 at ¶2, App. 302 at ¶5, App. 307 at ¶1. Therefore, in the specification :
"[t]he present invention is designed to dry or absorb [material, menses, odors, leakage etc...] **when one *observes*** a discharge or lubrication ..." Col. 3, ll. 5-9.
"Normally, such secretions are clean but occasionally debris in the form of blood...can accumulate. Accordingly, ...for the vaginal ***area*** or.... the vaginal ***area***..." Col. 1, ll. 31-37.

**FAIRLY RIGID CORE MEMBER**

To determine how rigid is a ***fairly rigid*** core member, the specification describes:

- 'a fairly rigid inner core member, constructed as **a one piece unit**' at Col. 2, ll. 6-7.
- "the swab portion is '***extremely compact*** ...so as to be portable, disposable carriable and usuable' at Col. 3, ll. 16-18.
- 'can be formed as a **solid** or hollow structure' at Col. 5, ll. 32-33.

The prosecution history identifies ***materials used*** **for a core member.** Moreover, in the United States Patent and Trademark Office, the Examiners correctly recognized *a fairly rigid* core member *based on* the ***flexible materials*** in the prior art. [2]

The accused devices are sold in bulk, but they are individually packaged.
The swab portion on the accused devices is **compact, solid** and a **one-piece** unit with the housing means. The swab portion is made safe, certain and assured from risk, loss and danger.




[2] **Reexamination** by the PTO confirmed the flat flexible sheet as a core member ("...may comprise **a fluid impermeable sheet material such as polyethylene or polypropylene cellophane or other similar films**"), Col. 4, ll.5-12 at App. 331A. Reexamination *proved* that prior art Srininvasanet al. 3,973,567 patent had structure readable in claim 2. App. 306A.

Consistent with reexamination, see prior art Bower 4,159,718 patent ("...a thin plastic flexible sheet material made from polyolefins or thermoplastics) in Col. 1, ll. 29-31.and ("...may comprise two layers of paper...[or] soft moldable plastic... comprising two rectangular sheets ...") at Col. 1, ll. 57-58 and Col. 2,ll. 24-29 at App. 197A.

Also, see prior art Fielding 3,731,682 patent: ("...knitted or woven materials such as yarn, thread, string or cord...") in Col. 4, ll.35-40 at App. 169A.

**OUTER HOUSING**

Claim 1 reads to an outer housing which includes an open end annular band and closed end annular base.

Claim 2 reads to an outer housing which includes an inner case member and outer case member.

"[T]he cover or ***outer case 110"*** is identified at Col. 5, ll.41. [3]

The previous claim construction does not identify a handle in claim 1 or in claim 2 :

> "the annular band or ring 106 of core member 102 has an outer diameter which is at least equal to the inner diameter of band 112 so that the two can fit" at Col. 5, ll. 44-45.




In other words, band 106 and band 112 are secured ... **until** ...the opening is initiated at Col. 6, ll. 44-48.



[3] The Hemphill '720 Patent [prosecution history] identifies ***materials used*** **for an outer housing:**

See prior art Bower 4,159,718 patent: ("...a thin plastic flexible sheet material made from polyolefins or thermoplastics in Col. 1, ll. 29-31.and ("...may comprise two layers of paper...[or] soft moldable plastic... comprising two rectangular sheets ...") at Col. 1, ll. 57-58 and Col. 2,ll. 24-29 at App. 197A.

See a cover in prior art Johansson 4,165,942 patent: ("...protective cover which can be opened up at one end ...and folded back to expose..") in Col. 1, ll. 48-55. App. 201A.

See a sheath in Schuster 4,157,709: "comprises an outer sheath, an intermediate tube slidable there within...."). Col. 2, ll. 60-66. App. 190A.

**HOUSING MEANS**

In the specification, the <u>Summary of the Present Invention</u>" identifies structure as the ***housing means*** *at* Col. 2, ll. 19-22.*:*

> "the outer container is essentially peeled away from an enclosing protecting relationship about the swab itself ***with at least part of the outer container forming the handle structure at the base of the thus exposed "swab"***..




Claim 2 requires: '...said core member being secured to housing means...' at Col. 8, ll. 1-2. Here, the structure 'at the base of the thus exposed swab' is <u>identified</u> as the housing means. In claim 2, the annular band 106 above serves as 'the handle structure that is not designed to be removed and thrown away'. ***Fold-over*** the accused device for forming a handle.

Claim 2 reads to the second position and requires:
'.....housing means for supporting and enclosing core member......
and for both exposing...and for forming a handle for said swab when in said second position." [4]

---

[4] Unlike claim 2, claim 1 is construed in the first position.
Claim 1 requires: '...core member being secured within said housing..."
Thus, the [open end ] outer housing in claim 1 is identified as the handle structure in claim 1.

**ABSORBENT MATERIAL**

In the Hemphill '720 patent, Claim 2 required

> *'at least **one layer of porous material** secured to core member'* at Col. 7, ll. 10 - 11 and requires '*said **porous padding** secured thereto...*' at Col 8, ll. 7/

In the specification at Col. 3, ll. 65-68: "[I]t is important to employ a highly absorbent material and accordingly, any such materials could be used as the absorbent material."

Characteristic **of an adsorbent member** in claim 1, is, at least two fibers working together as one which ***helps improve absorbing***.

> "[T]he patentee did not conceal or fail to disclose this correlation, but instead featured it as the centerpiece of [her] *invention.* In *Metabolite Lab., Inc v. Laboratory Corp.* 370 F3d. 1354, 1367 (Fed. Cir. 2004).

Undeniably, the devices accused of infringing clearly have components of the [vaginal] swab **as claimed in the Hemphill '720 Patent**. Compare *App.* 359A *with* 372A. [5]

---

[5]The accused devices excel in the marketplace by advertising the adsorbent member in claim 1:
*"a clean cover draws fluid away and helps keep it below the surface to help you feel clean and dry"*
*and "an absorbent material pulls fluid -in and locks it away"*



HOW DRI-WEAVE WORKS



Pulls wetness into the core.



Helps keep it there.

See "*honeycomb fibers that actually pull moisture down, then away. The channeling action means the same area can absorb ...keeps on absorbing...better protection that any ordinary maxi ever.*"
*"Pulls wetness into the core...helps keep it there ...to help keep you clean and dry"*