UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ALLEGRA D. HEMPHILL,  *pro se*,          )
                                         )
              Plaintiff,                 )          Civil Action No. 1:07CV1236
                                         )
       v.                                )          Judge Rosemary M. Collyer
                                         )
KIMBERLY-CLARK CORPORATION, and          )
THE PROCTER & GAMBLE CO.,                )
                                         )
              Defendants.                )

## DEFENDANTS' MOTION FOR RULE 11 SANCTIONS
## AND REQUEST FOR ATTORNEYS' FEES TO PREVAILING PARTY

Defendants Kimberly-Clark Corporation and The Procter & Gamble Company, by and through their attorneys, hereby move for sanctions against plaintiff Allegra D. Hemphill, pursuant to Rule 11 of the Federal Rules of Civil Procedure, and request that this Court declare this case "exceptional" and award Defendants their respective attorneys' fees under 35 U.S.C. § 285.

The grounds for this motion and the relief requested are set forth in the attached memorandum of law.

{03144/0/00352282.DOCv5}

Respectfully submitted,


_____/s/_____

James P. Ulwick
Bar No. 287763
KRAMON & GRAHAM, P.A.
One South Street - Suite 2600
Baltimore, Maryland 21202-3201
Phone:  (410) 752-6030
Facsimile:  (410) 539-1269

_____/s/_____

Blaney Harper
Bar No. 14783
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Phone:  (202) 879-3939
Facsimile:  (202) 626-1700

Kenneth R. Adamo
David M. Maiorana
JONES DAY
901 Lakeside Ave.
Cleveland, Ohio 44114
Phone: (216) 586-3939
Facsimile: (216) 579-0212

*Attorney for Defendant*
Kimberly-Clark Corporation

*Attorneys for Defendant*
The Procter & Gamble Company


Dated:  January 17, 2008

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ALLEGRA D. HEMPHILL, *pro se*,      )
                                               )
                 Plaintiff,            )        Civil Action No. 1:07CV1236
                                                 )
                  v.                    )        Judge Rosemary M. Collyer
                                                 )
KIMBERLY-CLARK CORPORATION, and      )
THE PROCTER & GAMBLE CO.,            )
                                                 )
                Defendants.         )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR RULE 11 SANCTIONS AND REQUEST FOR ATTORNEYS' FEES TO PREVAILING PARTY

Defendants Kimberly-Clark Corporation ("KCC") and The Procter & Gamble Company ("P&G") (together "Defendants"), by their undersigned counsel, submit this memorandum of law in support of their Motion for Rule 11 Sanctions and Request for Attorneys' Fees under 35 U.S.C. § 285 ("Section 285"), and state as follows:

### INTRODUCTION

This is a motion for Rule 11 sanctions and for an award of attorneys' fees to prevailing parties against plaintiff Allegra D. Hemphill ("Hemphill") for filing the frivolous complaint in this case. Defendants prevailed when this Court granted their motion to dismiss and ordered the matter dismissed with prejudice.

Rule 11 sanctions are warranted because Hemphill filed the complaint for the improper purpose of harassing Defendants, causing them to expend substantial resources to address her frivolous complaint. By filing the complaint in this matter, Plaintiff engaged in impermissible forum shopping even though the United States District Court for the District of Maryland

dismissed substantively identical claims Hemphill brought against Defendants in an earlier lawsuit.

Defendants request that the Court enjoin Hemphill from filing any further litigation against Defendants related to the '720 Patent without first applying to this Court for leave to file suit, certifying that any such claim is not based on facts already adjudicated in previous cases.

In addition, Defendants request that the Court determine that this case is exceptional, justifying an award of their attorneys' fees pursuant to 35 U.S.C. § 285. Hemphill filed this action with full knowledge of its frivolous and vexatious nature, and she has proceeded in bad faith despite the many rulings against her and despite Defendants' reasonable request that she withdraw her baseless complaint. Having filed and lost a lawsuit she knew to be groundless, Hemphill should be ordered to pay Defendants' attorneys' fees.

## **FACTUAL BACKGROUND**

I.    PRIOR LAWSUITS FILED BY HEMPHILL

This is the second substantively identical action filed by Hemphill against Defendants, and at least the third meritless infringement suit brought by Hemphill, under her U.S. Patent No. 4,557,720 (the "'720 Patent").

The first such suit, brought in the United States District Court for the District of Maryland, culminated in summary judgment against Hemphill in 2001. *See Hemphill v. McNeil-PPC, Inc.*, 134 F. Supp. 2d 719 (D. Md. 2001) (*Hemphill I*) (Exhibit 1). Judge Chasanow granted summary judgment of non-infringement in favor of the defendants. *Id.* at 728. Hemphill's appeals to the Federal Circuit and United States Supreme Court were denied. *See Hemphill v. McNeil-PPC, Inc.*, 25 Fed. Appx. 915 (Fed. Cir. 2001), *reh'g denied* Dec. 21, 2001, *cert. denied* 537 U.S. 820 (2002), and *petition for reh'g denied* 537 U.S. 1067 (2002).

On November 18, 2002, Hemphill filed in the United States District Court for the District

of Maryland her second complaint (the "Maryland Complaint"), this time naming KCC and

P&G. (*See* Exhibit 2.)  The Maryland Complaint alleged that KCC and P&G infringed the '720

Patent. *See* Maryland Complaint ¶ 12.  With regard to KCC, Hemphill claimed that KCC's

feminine hygiene products KOTEX® and POISE® infringed Claim 1 of the '720 Patent. *Id.* at ¶

13.  With regard to P&G, Hemphill claimed that P&G's ALWAYS® products infringed Claim 1

of the '720 Patent. *Id.*

On April 15, 2003, Judge Chasanow granted summary judgment of non-infringement in

Defendants' favor. *See Hemphill v. Procter & Gamble Co.*, 258 F. Supp. 2d 410 (D. Md. 2003)

*(Hemphill II)* (attached as Exhibit 3).  Relying on the collateral estoppel effect of *Hemphill I*,

Judge Chasanow held that, in both Claims 1 and 2 of the '720 Patent, defined terms must be

interpreted in *Hemphill II* as they were interpreted in *Hemphill I*. *Id.* at 416.  Because

Defendants' products lacked several of the elements claimed in the '720 Patent, as a matter of

law, the court found no infringement, either literally or under the doctrine of equivalents. *Id.* at

417-18.

Hemphill attempted, unsuccessfully, to overturn Judge Chasanow's ruling by making

several applications to the District of Maryland, the Fourth Circuit, the Federal Circuit, and the

United States Supreme Court, including but not limited to appeals and motions for

reconsideration, rehearing, rehearing *en banc*, and a motion entitled "Motion for a Final

Judgment."

II.    HEMPHILL'S LITIGATION BEFORE THIS COURT

Undaunted by her failures to overturn the numerous rulings against her, Hemphill tried a

new tactic: forum shopping in this Court.  On July 10, 2007, Hemphill filed the complaint in this

matter (the "D.C. Complaint") and alleged the same claims against the same parties as *Hemphill II*. In both the Maryland and D.C. Complaints, Hemphill alleged that the Defendants' ALWAYS®, KOTEX®, and POISE® products literally infringe her "vaginal swab" patent. She sought the same relief in the D.C. Complaint that previously was denied in the Maryland Complaint (and in *Hemphill I*).

The only difference in the two complaints is that in Maryland she relied on Claim 1 of the '720 Patent, whereas here she relied on Claim 2. This difference provided no basis for the new lawsuit because the claim elements that the Maryland court found to be missing in the Defendants' products – such as "vaginal swab," "outer housing," and "core member" – are present in both claims, and have the same meaning in both claims as a matter of law. *See Hemphill v. Kimberly-Clark Corp.*, Civ. Action No. 07-1236 (RKC), Memorandum Opinion (Docket #15) at 5 (D.D.C. Jan 3, 2008) ("*Hemphill III*"). Hemphill's forum-shopping is particularly blatant because she concedes in paragraph 12 of the D.C. Complaint that the "core member" and "outer housing" terms described in the '720 Patent in this matter "were previously adjudicated in United States District Court, for the District of Maryland . . .." *See* D.C. Complaint ¶ 12.

III.  DEFENDANTS ARE PREVAILING PARTIES

Defendants filed a motion to dismiss for *res judicata* and collateral estoppel under Federal Rule of Civil Procedure 12(b)(6).

Hemphill opposed Defendants' motion, presenting, in essence, the same assertions of infringement she presented in earlier motions and appeals. Hemphill also filed two additional motions, styled "Plaintiff's Motion for a Hearing" and "Plaintiff's Motion to Submit Exhibits" presenting the same arguments.

{03144/0/00352282.DOCv5}

4

This Court granted the motion to dismiss with prejudice on January 3, 2008, noting that the only difference between the Maryland Complaint and the D.C. Complaint was Hemphill's allegation that the Defendants infringed claim 2 of the '720 Patent, as opposed to claim 1, which Hemphill could have, and should have alleged in the Maryland Complaint. *See Hemphill III* at 5.

IV.    DEFENDANTS INCURRED SUBSTANTIAL ATTORNEYS' FEES
       TO OBTAIN DISMISSAL OF HEMPHILL'S FRIVOLOUS COMPLAINT

Although Defendants cooperated in their defense of this case to mitigate their costs, Hemphill's bad faith litigation tactics have caused Defendants to incur substantial legal fees.

Defendants first attempted to defuse this situation by reminding Hemphill that her claims had been fully and finally litigated in Maryland, and demanding that she immediately withdraw the complaint. (*See* Exhibit 4, hereinafter "the September 5 Letter"). Defendants attached to the September 5 Letter a draft motion for sanctions, and informed Hemphill that, if she did not withdraw the D.C. Complaint, Defendants would file the motion. *See* Exhibit 5, Affidavit of James P. Ulwick (the "Ulwick Affidavit") at ¶ 9. Unfortunately, Hemphill refused to withdraw her complaint. Therefore, Defendants were forced to expend additional resources in drafting and filing a motion to dismiss this case. Defendants also expended resources responding to Hemphill's frivolous and improper "Motion for a Hearing" and "Motion to Submit Exhibits."

The Ulwick Affidavit details the amounts expended by KCC in defending Hemphill's frivolous lawsuit. KCC's attorneys' fees in this matter are $18,373.00. The Maiorana Affidavit (Exhibit 6 hereto) details the amounts P&G expended in defending this frivolous lawsuit. P&G's attorneys' fees in this matter are $24,845.06. Defendants will submit copies of their attorneys' billing statements for *in camera* review upon request by the Court.

# **ARGUMENT**

I.     HEMPHILL HAS ENGAGED IN SANCTIONABLE CONDUCT
       IN HER QUEST TO SKIRT THE RULINGS OF THE DISTRICT OF MARYLAND

Rule 11 sanctions are available for Hemphill's bad faith forum shopping and her attempt

to relitigate issues already decided. *See, e.g., McLaughlin v. Bradlee*, 602 F. Supp. 1412, 1418

(D.D.C. 1985); *Reynolds v. U.S. Capitol Police Board*, 357 F. Supp. 2d 19, 23-24 (D.D.C. 2004).

By filing a complaint in this Court against the same parties, on the same facts litigated – and

adjudicated – in Maryland, she attempted to evade the prior rulings against her. Sanctions are

particularly appropriate where, as here, *res judicata* "plainly preclude[s] relitigation of the suit."

*McLaughlin*, 602 F. Supp. at 1417.

This Court employs the rule that:

> To bring an action in this district in the hope of obtaining a more
> favorable rule of law than was obtained in the district where
> plaintiff first elected to sue is forum shopping with a vengeance.

*Brinco Mining Ltd. v. Federal Ins. Co.*, 552 F. Supp. 1233, 1242 (D.D.C. 1982) (internal

citations and quotations omitted). The fact that Hemphill appears *pro se* is no exception to this

rule. *See Sparrow v. Reynolds*, 646 F. Supp. 834, 839 (D.D.C. 1986) (sanctioning a *pro se*

plaintiff for filing numerous complaints on facts litigated and lost at a full trial on the merits).

The objective test for sanctions requires the court to examine "whether a reasonable

inquiry would have revealed there was no basis in law or fact for the asserted claim."

*Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1275 (D.D.C. 1993). Once the court

finds that a pleading violates the rule, "'Rule 11 *requires* sanctions of some sort be imposed.'"

*Reynolds*, 357 F. Supp. 2d at 24 (internal quotations and citation omitted) (emphasis in original).

This court has discretion to assess sanctions reflecting the facts of the case before it. *Id.* at 26. Monetary sanctions are "well-established" as an appropriate sanction, and the measure of monetary sanctions may be the full costs of defending the "frivolous" or "bad faith" action. *Id.* (collecting cases, citations omitted).

Hemphill must have known that the D.C. Complaint was foreclosed by *res judicata* because these issues have already been litigated at least once (in *Hemphill II*), if not twice (in *Hemphill I*). She knows she sued the same two companies. Her complaint alleges infringement of the same patent by the same products. She even goes so far as to admit in paragraph 12 of the D.C. Complaint that these issues have already been litigated in Maryland. A "reasonable inquiry" would therefore have led Hemphill to realize the allegations of the D.C. Complaint had been considered and dismissed both by Judge Chasanow and the Federal Circuit. *See Washington Bancorporation*, 812 F. Supp. at 1275. Moreover, Hemphill ignored Defendants' letter requesting that she dismiss her suit, forcing them to expend the resources necessary to procure a dismissal of the D.C. Complaint. *Pro se* plaintiff or not, Hemphill has therefore committed sanctionable conduct by filing the D.C. Complaint. Objectively speaking, sanctions are required. *Id.*; *see also Reynolds*, 357 F. Supp. 2d at 24 (noting that sanctions are required for any violation of Rule 11).

*Pro se* plaintiff or not, Hemphill has committed sanctionable conduct by filing the D.C. Complaint. In particularly egregious cases such as this, a court has the discretion to fashion an injunctive litigation bar. Such a bar would require Hemphill to seek leave of this Court and show cause as to why any future filing should be permitted. *Sparrow*, 646 F. Supp. at 840. In seeking that permission, Hemphill would be required to "certify that [she] raises claims that [she] has never before raised and that no federal court has decided on the merits." *Id.*

{03144/0/00352282.DOCv5}    7

In *Sparrow*, the court imposed such a bar on a *pro se* plaintiff who brought numerous claims against the U.S. Navy notwithstanding the fact that he failed to obtain judgment on identical facts at a full trial on the merits. Finding that the plaintiff flouted the court's clear and unambiguous rulings on numerous occasions, the court fashioned an order prohibiting the plaintiff from filing any additional suits arising out of the same facts against the same parties without first receiving leave of the court. *Id.*; *see also Morning Star Baptist Church v. James City County Police*, 480 F. Supp. 2d 853, 862 (E.D. Va. 2007) (imposing a pre-litigation injunction against a *pro se* plaintiff for filing duplicative suits intended to harass an already-burdened court and opponent).

In this case, Hemphill has demonstrated a willful indifference to federal decisions dismissing her claims, and does not respect the prior judgments entered against her. She ignored Defendants' request to dismiss this case. The only way to avoid further taxing Defendants and this Court (as well as any other court Hemphill targets) with additional harassing, vexatious, and duplicative litigation is to enjoin Hemphill from commencing such actions. *See Sparrow*, 676 F. Supp. at 840.

In addition to monetary sanctions, Defendants request that the Court enjoin Hemphill from filing any further litigation against Defendants related to the '720 Patent without first applying to this Court for leave to file suit, certifying that any such claim is not based on facts already adjudicated in previous cases.

## II.    DEFENDANTS ARE ENTITLED TO THEIR ATTORNEYS' FEES UNDER SECTION 285

Section 285 states, in its entirety, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The rule was designed to permit courts "to rectify, at least

in part, the injustice done the defendant [and] serves additionally to defend the court and the judicial process against abuse." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1989) (awarding fees to party forced to defend litigation brought in bad faith). The amount of the recovery permitted under Section 285 is "a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation . . .." *Id.* at 755 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

The four-part test under Section 285 permits an award as follows:

> (1) the case must be exceptional, (2) the district court may exercise its discretion, (3) the fees must be reasonable, and (4) the fees may be awarded only to the prevailing party.

*Waner v. Ford Motor Co.*, 331 F.3d 851, 857 (Fed. Cir. 2003). Frivolity is one basis on which a court may declare a case exceptional under Section 285. The Federal Circuit defines a frivolous case as "one which the patentee knew or, on reasonable investigation, should have known, was baseless." *See Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993) (quoting *Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805, 810, 814 (Fed. Cir. 1990)). Frivolous suits, in this context, "must be measured against objective facts." *Refac Int'l, Inc. v. IBM Corp.*, 710 F. Supp. 569, 570 (D.N.J. 1989).

Defendants should recover their fees in this case because there is clear and convincing evidence that Hemphill "knew, or should have known that the suit was frivolous." *Id.* (holding that litigation had been filed in bad faith, and accused infringer was entitled to fees, because plaintiff asserted throughout litigation facts that were clearly unsupported by the subject patent).

Notwithstanding that the D.C. Complaint was frivolous on its face, Defendants also affirmatively advised Hemphill that her claim had no basis. She chose to ignore Defendants and press on with her case. This constitutes, at a minimum, evidence of gross negligence on

{03144/0/00352282.DOCv5}                                     9

Hemphill's part. *American Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990, 996-997 (W.D. Wis. 2002) (awarding fees as the result of "litigation misconduct and vexatious, unjustified, and otherwise bad faith litigation" where plaintiff conducted only a "cursory" investigation into infringement prior to filing suit); *see also Multi-Tech, Inc. v. Components, Inc.*, 708 F. Supp. 615, 620-621 (D. Del. 1989) (awarding fees for "gross negligence" where patent holder's failure to recognize well-documented evidence that the allegedly infringing product was excluded from his patent); *F&G Research, Inc. v. Google Inc.*, No. 06-60905-CIV., 2007 WL 2774031, *13 (S.D. Fla. Sept. 21, 2007) (awarding fees against patent holder for refusing to withdraw complaint after being advised by in-house counsel of alleged infringer that the complaint had no basis in law or fact).

The only plausible explanations for Hemphill's forum-shopping in this Court, are that she hoped to obtain a better result here, or she intended to annoy and harass Defendants. In any event, this Court may infer Hemphill's bad faith because her actions in this matter demonstrate that she was "manifestly unreasonable in assessing infringement, while continuing to assert infringement in court." *Eltech*, 903 F.2d at 811 (awarding fees where plaintiff should have known its suit was frivolous, but maintained suit in bad faith by failing to investigate complaint before filing and failing to consider claims made by alleged infringer). Given her misconduct, this Court should infer bad faith and award to Defendants "a fully compensatory fee." *Mathis v. Spears*, 857 F.2d at 755 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

CONCLUSION

For the foregoing reasons, Defendants respectfully request an order for sanctions against

Hemphill in the form of: (1) an injunction against Hemphill, requiring her to obtain leave of this

Court before commencing any further litigation against Defendants based on the '720 patent; and

(2) a monetary award of Defendants' respective attorneys' fees in defending this suit.

Respectfully submitted,


_____/s/_____          _____/s/_____
James P. Ulwick                           Blaney Harper
Bar No. 287763                            Bar No. 14783
KRAMON & GRAHAM, P.A.                      JONES DAY
One South Street - Suite 2600             51 Louisiana Avenue, N.W.
Baltimore, Maryland 21202-3201            Washington, D.C.  20001
Phone:  (410) 752-6030                    Phone:  (202) 879-3939
Facsimile:  (410) 539-1269                Facsimile:  (202) 626-1700

                                          Kenneth R. Adamo
                                          David M. Maiorana
                                          JONES DAY
                                          901 Lakeside Ave.
                                          Cleveland, Ohio 44114
                                          Phone: (216) 586-3939
                                          Facsimile: (216) 579-0212


*Attorney for Defendant*                  *Attorneys for Defendant*
Kimberly-Clark Corporation                The Procter & Gamble Company


Dated:  January 17, 2008

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALLEGRA D. HEMPHILL, *pro se*, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:07CV1236 |
| | ) | |
| v. | ) | Judge Rosemary M. Collyer |
| | ) | |
| KIMBERLY-CLARK CORPORATION, and | ) | |
| THE PROCTER & GAMBLE CO., | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January, 2008, a copy of Defendants' Motion for

Rule 11 Sanctions and Request for Attorneys' Fees to Prevailing Party, supporting memorandum

of law, and proposed Order were served by first-class U.S. Mail, postage prepaid, on:

> Allegra D. Hemphill
> 6217 Charnwood Drive
> Rockville, Maryland 20852
>
> *Pro Se Plaintiff*

> _____/s/_____
> James P. Ulwick (Bar No. 287763)
> Kramon & Graham, P.A.
> One South Street
> Suite 2600
> Baltimore, Maryland 21202
> Telephone: (410) 752-6030
> Facsimile: (410) 539-1269
>
> *Attorneys for Defendant*
> *Kimberly-Clark Corporation*

{03144/0/00352282.DOCv5}

# EXHIBIT
# 1

Westlaw.

134 F.Supp.2d 719

**(Cite as: 134 F.Supp.2d 719)**

**H**
Hemphill v. McNeil-PPC, Inc.
D.Md.,2001.

United States District Court,D. Maryland.
Allegra D. HEMPHILL
v.
McNEIL-PPC, INC.
**No. Civ.A. DKC 99-654.**

March 12, 2001.

Owner of patent for vaginal applicator brought infringement action against manufacturer of sanitary napkins. On manufacturer's motion for summary judgment, the District Court, <u>Chasanow</u>, J., construed terms of patent, and then held that accused products neither literally nor equivalently infringed patent.

Motion granted.
West Headnotes
**[1] Federal Civil Procedure 170A ☞314.1**

<u>170A</u> Federal Civil Procedure
    <u>170AII</u> Parties
        <u>170AII(H)</u> Intervention
            <u>170AII(H)1</u> In General
                <u>170Ak314</u> Grounds
                    <u>170Ak314.1</u> k. In General. <u>Most Cited Cases</u>
Permissive intervention is appropriate in circumstances in which (1) application is timely; (2) moving party's claim or defense and main action have common question of law or fact; and (3) proposed intervention will not unduly delay or prejudice adjudication of original parties' rights. <u>Fed.Rules Civ.Proc.Rule 24(b)(2), 28 U.S.C.A.</u>

**[2] Patents 291 ☞290(3)**

<u>291</u> Patents
    <u>291XII</u> Infringement
        <u>291XII(C)</u> Suits in Equity
            <u>291k290</u> Parties
                <u>291k290(3)</u> k. New Parties and Change of Parties. <u>Most Cited Cases</u>
Manufacturer of product which patent infringement plaintiff had mentioned as infringing in deposition, but which was not listed in complaint or asserted as infringing in any subsequent pleadings, would not be allowed to intervene as party defendant; plaintiff would not be required to litigate issue she had not asserted, and eight month delay between date of deposition and intervention motion was unreasonable. <u>Fed.Rules Civ.Proc.Rule 24(b)(2), 28 U.S.C.A.</u>

**[3] Patents 291 ☞323.2(1)**

<u>291</u> Patents
    <u>291XII</u> Infringement
        <u>291XII(C)</u> Suits in Equity
            <u>291k323</u> Final Judgment or Decree
                <u>291k323.2</u> Summary Judgment
                    <u>291k323.2(1)</u> k. In General. <u>Most Cited Cases</u>
Good faith dispute about meaning and scope of asserted claims does not, in and of itself, create genuine dispute to preclude summary judgment in patent infringement case.

**[4] Patents 291 ☞314(5)**

<u>291</u> Patents
    <u>291XII</u> Infringement
        <u>291XII(C)</u> Suits in Equity
            <u>291k314</u> Hearing
                <u>291k314(5)</u> k. Questions of Law or Fact. <u>Most Cited Cases</u>
Patent claim construction is matter of law for court to decide.

**[5] Patents 291 ☞165(1)**

<u>291</u> Patents
    <u>291IX</u> Construction and Operation of Letters Patent
        <u>291IX(B)</u> Limitation of Claims
            <u>291k165</u> Operation and Effect of Claims in General
                <u>291k165(1)</u> k. In General. <u>Most Cited Cases</u>

**Patents 291 ☞167(1)**

<u>291</u> Patents
    <u>291IX</u> Construction and Operation of Letters Patent

134 F.Supp.2d 719                                                                                          Page 2
134 F.Supp.2d 719
**(Cite as: 134 F.Supp.2d 719)**

291IX(B) Limitation of Claims
    291k167 Specifications, Drawings, and Models
      291k167(1) k. In General. Most Cited Cases

**Patents 291 ☜168(2.1)**

291 Patents
    291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
        291k168 Proceedings in Patent Office in General
          291k168(2) Rejection and Amendment of Claims
            291k168(2.1) k. In General. Most Cited Cases
When construing patent claim, court should look to intrinsic evidence, i.e., patent itself, its claims, written description, and prosecution history.

**[6] Patents 291 ☜168(2.1)**

291 Patents
    291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
        291k168 Proceedings in Patent Office in General
          291k168(2) Rejection and Amendment of Claims
            291k168(2.1) k. In General. Most Cited Cases
Statements made during reexamination proceeding are relevant prosecution history when interpreting patent claims.

**[7] Patents 291 ☜165(3)**

291 Patents
    291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
        291k165 Operation and Effect of Claims in General
          291k165(3) k. Construction of Language of Claims in General. Most Cited Cases
Patent claim construction begins with words of claim, which are given their plain meaning unless inventor, choosing to be his or her own lexicographer, uses terms in manner other than their ordinary meaning and clearly discloses these special or alternative

meanings in patent specification or file history.

**[8] Patents 291 ☜165(3)**

291 Patents
    291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
        291k165 Operation and Effect of Claims in General
          291k165(3) k. Construction of Language of Claims in General. Most Cited Cases
Court may rely on dictionary definitions when construing patent claim terms, so long as such definition does not contradict any definition found in or ascertained by reading of patent documents.

**[9] Patents 291 ☜168(2.1)**

291 Patents
    291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
        291k168 Proceedings in Patent Office in General
          291k168(2) Rejection and Amendment of Claims
            291k168(2.1) k. In General. Most Cited Cases
Prosecution history required that " vaginal" swab, called for in patent for applicator device, be limited to swab entering into vaginal canal.

**[10] Patents 291 ☜176**

291 Patents
    291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
        291k176 k. Claims for Machines or Manufactures in General. Most Cited Cases
Vaginal " swab," called for in patent for applicator device, was small piece of absorbent material attached to end of stick or wire and used for cleansing or applying medicine.

**[11] Patents 291 ☜176**

291 Patents
    291IX Construction and Operation of Letters Patent

134 F.Supp.2d 719
**(Cite as: 134 F.Supp.2d 719)**

291IX(B) Limitation of Claims
291k176 k. Claims for Machines or Manufactures in General. Most Cited Cases
" Outer housing," called for in patent for vaginal applicator, was not merely protective packaging, designed to be removed and thrown away; rather, it functioned as handle for use of enclosed swab.

**[12] Patents 291 ⚫⟶176**

291 Patents
291IX Construction and Operation of Letters Patent
291IX(B) Limitation of Claims
291k176 k. Claims for Machines or Manufactures in General. Most Cited Cases
" Core member," called for in patent for vaginal applicator, had to be fairly rigid, with annular band or ring at its base that could fit into band or ring of outer housing.

**[13] Patents 291 ⚫⟶176**

291 Patents
291IX Construction and Operation of Letters Patent
291IX(B) Limitation of Claims
291k176 k. Claims for Machines or Manufactures in General. Most Cited Cases
" Porous material," called for in patent for vaginal applicator, had to be secured to exterior surface of core member and be composed of adsorbent material.

**[14] Patents 291 ⚫⟶226.6**

291 Patents
291XII Infringement
291XII(A) What Constitutes Infringement
291k226.5 Substantial Identity of Subject Matter
291k226.6 k. Comparison with Claims of Patent. Most Cited Cases
Claim of literal patent infringement requires proof that accused device meets every limitation of properly construed claim; if even one limitation is missing or not met as claimed, there is no literal infringement.

**[15] Patents 291 ⚫⟶235(2)**

291 Patents
291XII Infringement

291XII(A) What Constitutes Infringement
291k233 Patents for Machines or Manufactures
291k235 Identity of Principle or Mode of Operation
291k235(2) k. Particular Patents or Devices. Most Cited Cases
Sanitary napkin products which lacked rigid cores and were not designed for use within vaginal canal did not literally infringe patent for vaginal applicator.

**[16] Patents 291 ⚫⟶237**

291 Patents
291XII Infringement
291XII(A) What Constitutes Infringement
291k233 Patents for Machines or Manufactures
291k237 k. Substitution of Equivalents. Most Cited Cases
Under doctrine of equivalents, product which does not literally infringe upon express terms of a patent may nonetheless infringe if there is insubstantial difference, or " equivalence," between elements of accused product and claimed elements of patent.

**[17] Patents 291 ⚫⟶237**

291 Patents
291XII Infringement
291XII(A) What Constitutes Infringement
291k233 Patents for Machines or Manufactures
291k237 k. Substitution of Equivalents. Most Cited Cases
Test to determine insubstantiality of differences between element of accused device and patent, and hence infringement under doctrine of equivalents, is whether element performs substantially same function in substantially same way to obtain substantially same result as claim limitation.

**[18] Patents 291 ⚫⟶237**

291 Patents
291XII Infringement
291XII(A) What Constitutes Infringement
291k233 Patents for Machines or Manufactures
291k237 k. Substitution of Equivalents. Most Cited Cases
Sanitary napkin products did not infringe patent for

134 F.Supp.2d 719                                                   Page 4

134 F.Supp.2d 719

**(Cite as: 134 F.Supp.2d 719)**

vaginal applicator under doctrine of equivalents; accused products did not look or function like patented device.

**Patents 291 ☜328(2)**

291 Patents
   291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(2) k. Original Utility. Most Cited Cases
2,393,677, 3,973,567, 4,177,811. Cited As Prior Art.

**Patents 291 ☜328(2)**

291 Patents
   291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(2) k. Original Utility. Most Cited Cases
4,557,720. Not Infringed.

***720** Allegra D. Hemphill, Rockville, MD, pro se. George Pappas, Vicki Ann Margolis, Venable, Baetjer & Howard, LLP, Baltimore, MD, Davida H. Isaacs, Terri L. Turner, Venable, Baetjer Howard and Civiletti, LLP, Washington, DC, for defendant.

### *MEMORANDUM OPINION*

CHASANOW, Judge.
Plaintiff Allegra Hemphill, proceeding *pro se,* alleges that Defendant Johnson & Johnson, Inc. (" Johnson and Johnson" ) manufactures and distributes products which infringe on her patent, U.S. Patent 4,557,720 (" the '720 patent" ).[FN1] Presently pending and ready for resolution are three motions. Johnson & Johnson Consumer Companies, Inc. (" JJCCI" ) has filed a Motion**721** for Leave to Permissively Intervene. Defendant McNeil has filed both a Motion for Summary Judgment for Noninfringement and a Motion to Bifurcate.[FN2] The issues are fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the following reasons, the court shall deny JJCCI's Motion for Leave to Permissively Intervene and grant McNeil's Motion for Summary Judgment.[FN3]

FN1. On February 14, 2000, this court ordered that McNeil-PPC, Inc. (" McNeil" ) replace Johnson & Johnson as the party defendant because McNeil is the entity responsible for the manufacture and distribution of the Stayfree, Carefree, and Serenity products at issue in this case. Paper No. 36.

FN2. The issue of non-infringement is the sole issue in McNeil's summary judgment motion because Defendant does not argue the invalidity or unenforceability of Plaintiff's patent. Paper No. 57, 2 n. 2.

FN3. In light of this court's decision to grant McNeil's Motion for Summary Judgment, Defendant's Motion to Bifurcate is no longer applicable, and thus, the motion will be denied as moot.

### I. Background

Ms. Hemphill filed her application for the '720 patent with the Patent and Trademark Office (" PTO" ) on June 11, 1984, and her patent was subsequently issued on December 10, 1985. Paper No. 46, Ex. D1. Bearing the title " Vaginal Applicator" , the '720 patent describes a disposable vaginal swab or refresher meant either to cleanse or to treat the vaginal area with fragrances, medications, germicides, or deodorants. *Id.,* Col. 1, lines 33-38. The '720 Patent has two independent claims, but only claim 2 is at issue in this litigation. *Id.,* Ex. B, Deposition of Allegra Hemphill (" Hemphill Depo" ), 10. The description contained in claim 2 of the Applicator is as follows:
a vaginal swab comprising an outer housing including an inner case member and an outer case member at least part of which is connected to and said overlies inner case member;
a core member, at least one layer of porous material secured to said core member, and housing means for both supporting and enclosing said core member, said core member being secured to said housing means, having at least two portions movable relative to one another between first and second positions for enclosing said core member when in said first position and for both, exposing said core member and the said porous padding secured thereto and for forming a handle for said swab when in said second position.

*Id.,* Ex. D1, Col. 7-8, lines 1-10.

### A. Prosecution of the '720 Patent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

134 F.Supp.2d 719

134 F.Supp.2d 719

(Cite as: 134 F.Supp.2d 719)

Page 5

During the prosecution phase, Plaintiff narrowed her claims to distinguish her invention from prior art cited by the Examiner. For example, Plaintiff clarified the distinction between her invention and a patent awarded to M. Alvarez by explaining that:
[t]he Alvarez device does not allow for an elongated structure for the swabbing element to be introduced into the vaginal cavity nor does it provide a sufficient handle structure.

*Id.,* Ex. D10, PTO 00313. She also differentiated between the porous material specified in the respective patents.Alvarez teaches that a moisture absorbent layer is exposed after the protective covering is removed. There is a distinct difference between **Ab** sorbent and **Ad** sorbent, or *ab* as in Alvarez, absorb is to take in, suck up, swallow, engross wholly, to take up or receive by chemical or molecular actions as of gases or liquids, and to *ad* as in *Hemphill* to adsorb is to take up and hold, to gather gas or liquid or dissolved material on a surface.

*Id.,* Ex. D6, PTO 00336 (emphasis added).

Additionally, Plaintiff distinguished the " housing" in her invention from the " housing" in the patent issued to Albert Gelardin**722** for a Cosmetic Holder. Plaintiff noted:
[t]he Hemphill device, after removing the outer housing serves as a handle structure, and still serves as a function for the device, unlike Gelardin that states that the cover is completely removed.

*Id.,* Ex. D6, PTO 00342 (emphasis added).

### B. Reexamination of the '720 Patent

On February 2, 1998, Plaintiff asked the PTO to re-examine her patent in light of the McNair patent (" McNair" ) for a Sanitary Napkin with wings. The description of the McNair patent states as follows:
The central element and side elements have fluid-impervious backing upon which is placed a thin layer adhesive which will not penetrate the absorbent materials placed thereon. The central element has a highly-absorptive pad means whereas the absorptive means on the side panels may be minimal. The backing element of the central portion of the invention contains a strip of adhesive covered by a protective tape until use.

*Id.,* Ex. E2, AH 0222. Plaintiff differentiated her

invention from McNair by stating that " Hemphill [vaginal swab] improves absorbing on the McNair cover sheet because of an adsorbency characteristic." *Id.,* Ex. E1, AH 0230. Thus, the McNair patent required an absorbent porous sheet, whereas Plaintiff's patent specified **adsorbent** porous material.

Ultimately, the PTO denied Plaintiff's request for reexamination after finding that the McNair patent " did not raise a substantial new question of patentability." . *Id.,* E4, AH 0227. Specifically, the PTO stated that the McNair patent " discloses none of the structural features recited [in Plaintiff's claims]" in light of Plaintiff's invention having a particular core member and housing. *Id.*

Plaintiff also applied for reexamination of her patent on May 20, 1998, this time over a patent held by Srinivasan, *et al. Id.,* Ex. F2, U.S. Letters Patent No. 3,973,567 (" the Srinivasan patent" ). The Srinivasan patent describes a " wrapped" sanitary napkin that includes plastic outer packaging and a napkin that affixes to an undergarment using an adhesive. The patent contains this description of the invention:
A sanitary napkin having an adhesive element thereon for attaching to an undergarment is provided with means for protecting the napkin and the adhesive element prior to use and for disposing of the napkin after use. The means comprise providing the napkin with a wrapper sheet of flexible material overlying one major surface, and the sides of the napkin and at least partially overlapping on the second major surface of the napkin. The sheet is releasably adhered to and held in place by the adhesive element.

*Id.,* Ex. F1, PTO 00509.

The PTO granted Plaintiff's request for reexamination, finding that " [a] substantial new question of patentability affecting Claim 2" was raised by the Srinivasan patent. *Id.,* Ex. F3, PTO 00481. Agreeing to compare claim 2 and the Srinivasan patent more closely, the PTO acknowledged the possibility that Srinivasan had the claimed structure, such as " a core member surrounded by a layer of porous material, an outer housing, and housing means with 2 positions (one position that protects the core member and another position that exposes the core member for use)." *Id.*

In an effort to get her claim reissued, Plaintiff stated

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

134 F.Supp.2d 719                                                                                              Page 6

134 F.Supp.2d 719

(Cite as: 134 F.Supp.2d 719)

the Srinivasan patent lacked both the " housing means" and " a band" at the base of the core member, found in her invention. _Id.,_ Ex. F4, PTO *723 00484. Plaintiff emphasized that the missing band was particularly significant to her invention because " [t]he band is the means or intermediary in *both* positions from the closed location to the open state" , _Id.,_ Ex. F4, PTO 00486 (emphasis in original), allowing users " to keep sticky fingers off the fibers." _Id.,_ Ex. F2, PTO 00447. Furthermore, Plaintiff distinguished her vaginal swab by stating: " [i]t should be well understood that **Hemphill does not behave, operate, or function like a sanitary napkin. Srinivasan does not have the components or parts t o be v aginal s wab.**" _Id.,_ Ex F2, PTO 00451 (emphasis in original).

On January 26, 1999, the PTO issued a reexamination certificate for the '720 Patent over Srinivasan for the following reasons:
Claim 1 of the patent to Hemphill (4557720) is considered patentable over the patent to Srinivasan, et al. (3973567) because Srinivasan simply does not disclose the claimed structure, such as an open end opposite a closed end, an annular band, and frangible seams.
Claim 2 of the patent to Hemphill (4557720) is considered patentable over the patent to Srinivasan, et al., (3973567) because Srinivasan does not disclose the housing means of Hemphill and does not disclose a structure that could be considered equivalent to the housing means of Hemphill.

_Id.,_ Ex. F6, PTO 00490.

According to Defendant, beginning in 1994 and continuing for the next four years, Plaintiff sent letters to Johnson & Johnson executives alleging that the company's sanitary and adult napkins incorporate her patented technology. Specifically, Plaintiff has alleged that the Stayfree sanitary napkin, Carefree sanitary napkin, and Serenity adult napkin product lines infringe upon her patent.[FN4] Moreover, Plaintiff testified that she considers these respective product lines to be structurally equivalent to each other. _Id.,_ Ex. B, 363, 368, 372-74, 376-77.

> FN4. Although Plaintiff mentions in her deposition testimony that Band Aid brand adhesive bandage products also infringe upon her patent, she never actually argues this contention. This court construes

Plaintiff's complaint as limited to products from the Stayfree, Carefree, and Serenity product lines.

Defendant agrees that the three different product lines are nearly identical in design. _Id.,_ Ex. A, McCoy Decl., ¶ 5. Defendant has provided the following undisputed description of these products:
The Accused Napkins are sold in multiple units in large plastic bags, inside of which are individual napkins packaged in plastic wrappers. (Ex. A, McCoy Decl., ¶ 6). Each of these individual units is composed of absorbent material with a flexible thin porous membrane that is attached on one side to a flexible plastic sheet that has an adhesive on the other side. _Id.,_ ¶ 7. In its packaging, the side of the plastic sheet containing the adhesive is attached to a thin paper sheet. _Id.,_ ¶ 7. In order to use the napkin, the consumer removes the plastic packaging, and peels off the thin paper sheet. _Id.,_ ¶ 9. Then, the consumer presses the side with the adhesive to the undergarment in order to attach the napkin to the undergarment. _Id._ The napkin is intended to passively collect fluid during use. _Id.,_ ¶ 10. After use, the consumer pulls on the napkin to peel it off the undergarment, and then discards it, either directly or by first inserting the napkin into the plastic wrapper of the next napkin. _Id.,_ ¶ 11. The Accused Napkins are not designed to be used or placed internally in the vagina. _Id.,_ ¶ 12. They do not have *724 handles, and do not have adsorbent material. _Id.,_ ¶ 13.

Paper No. 46, 5.

## II. Motion To Intervene

JJCCI has filed a motion for leave to permissively intervene pursuant to Rule 24(b). *See* Fed.R.Civ.P. 24(b). In October 1999 at her deposition, Plaintiff suggested that Band-Aid brand adhesive bandage products may also infringe upon her patent. These bandages are manufactured and/or distributed by JJCCI, another subsidiary of Johnson & Johnson, not by McNeil-the current party Defendant.

### A. *JJCCI's Motion for Leave to Permissively Intervene*

[1] Rule 24(b)(2) provides, in pertinent part:
Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common ... In exercising its discretion, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b)(2). Thus, permissive intervention is appropriate in circumstances in which 1) the application is timely; 2) the moving party's claim or defense and the main action have a common question of law or fact; and 3) the proposed intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *Hill v. W. Electric Co.,* 672 F.2d 381, 386 (4th Cir.1982); 6 James Wm. Moore et al., *Moore's Federal Practice* § 24.10 (3d ed.1997).

### B. *Analysis*

[2] Although Plaintiff identified Band Aid brand adhesive bandages at her deposition taken October 18, 1999 as a product line allegedly infringing upon her patent, she never made this assertion again. Paper No. 53, Exhibit A, Hemphill Depo., 375-376. In fact, both Plaintiff's response to JJCCI's motion for leave to permissively intervene and her opposition memorandum to McNeil's motion for summary judgment contain assertions that Stayfree, Carefree, and Serenity product lines are the sole product lines she is litigating in this lawsuit. Paper No. 48 at 5, Paper No. 55 at 1. Plaintiff does not assert that Band Aid products are within the identified accused products in her complaint or in any of her papers, thus, this court will not force her to litigate an issue she has not asserted.

Moreover, JJCCI provides absolutely no explanation for the eight month time lapse between receiving notice through Plaintiff's deposition testimony in October 1999 and filing this motion in May 2000. Plaintiff also asserts that JJCCI's motion is untimely, particularly, in light of discovery closing on March 13, 2000. Thus, the court shall deny JJCCI's motion for leave to permissively intervene.

### III. McNeil's Motion for Summary Judgment

#### A. *Summary Judgment Standard*

In patent cases, as well as in other cases, a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317,

322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Alexander,* 85 F.3d 146, 150 (4th Cir.1996). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

*725 When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 (4th Cir.1998). A properly supported motion for summary judgment may not be defeated by " the mere existence of some alleged factual dispute between the parties." *Anderson,* 477 U.S. at 247-48, 106 S.Ct. 2505. Further, while the court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, the requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Social Services,* 901 F.2d 387, 391 (4th Cir.1990); *Beaudett v. City of Hampton,* 775 F.2d 1274, 1277 (4th Cir.1985).

[3] Although an infringement analysis usually involves both questions of fact and law, summary judgment of noninfringement may still be proper. *Nike, Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed.Cir.1994); *Chemical Eng'g Corp. v. Essef Indus. Inc.,* 795 F.2d 1565, 1571 (Fed.Cir.1986). A good faith dispute about the meaning and scope of asserted claims does not, in and of itself, create a genuine dispute to preclude summary judgment in patent cases. *Lantech, Inc. v. Keip Mach. Co.,* 32 F.3d 542, 546 (Fed.Cir.1994).

### B. *Analysis*

Plaintiff alleges that McNeil's Stayfree, Carefree, and Serenity product lines literally infringe her '720 patent. Defendant objects to this characterization by stating that the original design for these products existed prior to Hemphill's patent and that these products vary in both design and purpose compared to Hemphill's vaginal applicator.[FN5]

> FN5. Defendant asserts that all of the accused products arise from a Stayfree sanitary napkin sold in 1981, prior to the existence of the '720 patent. *See* Paper No.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

134 F.Supp.2d 719

134 F.Supp.2d 719

(Cite as: 134 F.Supp.2d 719)

Page 8

46, Exhibit L, Stayfree Sanitary Napkin Manufacturing Specifications. Plaintiff, however, contends that the design of these accused products changed after she sent samples of her patented invention to Defendant's parent company in an attempt to distribute her product commercially. Without reaching the question of whether the accused products were sold in the same form prior to the filing of the '720 patent, this court will analyze whether the products in their present form infringe Plaintiff's '720 patent.

[4][5][6] In order to assess this motion, the court must engage in a two-step infringement analysis. " The first step is determining the meaning and the scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (*en banc*), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim construction is correctly a matter of law for the court to decide. *Id.* When construing a claim, a court should look to the intrinsic evidence, *i.e.,* the patent itself, its claims, written description, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). Additionally, statements made during the reissue [reexamination] proceeding " are relevant prosecution history when interpreting claims." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1439 (Fed.Cir.1988).

**1. Claim Construction**

[7][8] Claim construction begins with the words of the claim. *Bell Comm. Research, Inc. v. Vitalink Comm. Corp.,* 55 F.3d 615, 619-620 (Fed.Cir.1995). Moreover, claim terms are given their plain meaning unless the inventor, " choosing to be his or her own lexicographer," uses *726 terms in a manner other than their ordinary meaning and clearly discloses these special or alternative meanings in the patent specification or file history. *Vitronics,* 90 F.3d at 1582; *Beachcombers v. WildeWood Creative Products, Inc.,* 31 F.3d 1154, 1158 (Fed.Cir.1994). Courts may rely on dictionary definitions when construing claim terms " so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Vitronics,* 90 F.3d at 1582.

The parties agree that only claim 2 of the '720 patent is at issue. Claim 2 provides in pertinent part as follows:

A vaginal swab comprising an outer housing including an inner case member and an outer case member at least part of which is connected to and overlies said inner case member;

a core member, at least one layer of porous material secured to said core member, and housing means for supporting and enclosing said core member, said core member being secured to said housing means, having at least two portions movable relative to one another between first and second positions for enclosing said core member when in said first position and for both exposing said core member and the said porous padding secured thereto and form forming a handle for said swab when in said second position.

Plaintiff has specifically identified the four component parts to the vaginal swab as: 1) outer housing; 2) core member; 3) at least one layer of porous material; and 4) a housing means. Paper No. 46, Ex. G.

**a. Vaginal Swab**

[9] Plaintiff asserts that the term " vaginal" refers to the outer housing as the cover or sheath, and " swab" refers to the unit being used as either a swab to dry or absorb or an applicator to hold or apply treatment. Paper No. 55, 3. By contrast, Defendant offers a narrower definition that a " vaginal swab" is a stick or wire with a small piece of absorbent material attached to the end of it, which is of a size and structure for cleansing or applying medicine within the vaginal canal.

While the claim provides little guidance as to the terms " vaginal" and " swab" , the '720 patent specification clarifies that Plaintiff designed the " vaginal swab" to enter into the vaginal cavity. For example, the specification defines the purpose of the invention as " a truly portable, convenient, and disposable internal vaginal cleaning device or refresher." Paper No. 46, Exhibit F1, Col. 1, lines 46-48. Moreover, the invention in the '720 patent " is designed to dry or absorb material in the internal vaginal area." *Id.,* Col. 3, lines 5-6. In fact, the length of the average vaginal cavity establishes the approximate length of the swab, including the core and gauze material. *Id.,* Col. 3, lines 50-54. From the prosecution history, Plaintiff also distinguished her

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

invention from prior art on this particular point by stating that the invention (Alvarez) lacked " an elongated structure for the swabbing element to be introduced into the vaginal cavity." *Id.,* Ex. D10, PTO 00313.

In the face of all of this evidence, Plaintiff will not be allowed to claim that her invention is not meant to enter into the vaginal cavity. After all, " a patentee may not construe a claim term one way during prosecution in order to obtain allowance of the patent and then in a different way during litigation in order to obtain a finding of infringement." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 133 F.Supp.2d 833, ----, 2001 WL 179815, at *4 (E.D.Va.2001) (citing *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1579 (Fed.Cir.1995)). Thus, the '720 patent limits the term " vaginal" to a swab entering into the vaginal canal.

**\*727** [10] As for " swab" , the '720 Patent states that a vaginal swab should preferably be " comprised of fairly rigid core member, constructed either in segments or as a one piece unit, over which a thick, gauze type adsorbent pad or layer is secured." Paper No. 46, Ex. D1, Col. 2, lines 5-9. The plain meaning of the term " swab" is " a small piece of absorbent material attached to the end of a stick or wire and used for cleansing or applying medicine." *American Heritage Dictionary* 1810 (3d ed.1992); *Dorland's Medical Dictionary* 1617 (28th ed.1994).

### b. Outer Housing & a Housing Means

[11] Plaintiff asserts that " outer housing" is the " packaging" that protects [the swab] from danger, risk or loss in an enclosing or protecting relationship and the " housing means" is a part of the " outer housing" . Paper No. 55, 2. In claim 2, she states that the outer housing must have " an inner case member and an outer case member," must be secured to the core member and must have " at least two portions movable relative to one another." Paper No. 46, D1, Col. 7-8, lines 1-10. Moreover, the '720 patent specification states that the " outer housing" is comprised of " an exterior cover, an internal tubular member, and rotatable base." *Id.,* Col. 1, lines 19-22. During the prosecution process, Plaintiff further clarified the housing structure in order to distinguish her invention from Gelardin's patent. She explained: [t]he Hemphill device, after removing the outer housing serves as a handle structure, and still serves as a function for the device, *unlike Gelardin ...* that

states that the cover is completely removed.

Thus, the outer housing is not designed to be removed and thrown away but actually functions as a handle for the use of the swab. Plaintiff's suggestion that the outer housing is only equivalent to protective packaging is clearly at odds with both the terms of the patent as well as the Plaintiff's own assertions during the prosecution phase.

### c. Core Member

[12] Plaintiff claims that having an accused device with a core member, whether flexible or rigid, is enough to infringe upon her patent. However, according to the '720 patent specifications, the core member should be " fairly rigid" , *Id.,* Col. 7, line 10, and have an " annular band and ring" at the base, *Id.,* Col. 5, lines 31-33. Furthermore, the core member is secured to the outer housing and " can be formed either as a solid structure or preferably with a hollow interior." *Id.,* Col. 5, lines 33-35. The purpose of the " annular band" is twofold: 1) " to keep sticky fingers off the fibers," *Id.,* Ex. F2, PTO 00447, and 2) to possess " an outer diameter which is at least equal to the inner diameter" of the band attached to the outer housing, " so that the two can fit thereby allowing the core to be secured within the band by a suitable adhesive." *Id.,* Ex. D1, Col. 5, lines 45-48. Thus, consistent with the patent specifications, claim 2 requires a fairly rigid core member with an annular band or ring at its base that can fit into the band or ring of the outer housing.

### d. Layer of porous material

[13] Plaintiff identified the layer of porous material as a critical element of her invention. Paper No. 46, Exhibit G. In prior documentation, including the patent itself, Plaintiff provided a much more specific definition for the layer of porous material. In fact, the '720 patent specification dictates that the porous material should be " secured about the exterior surface of [the] core." *Id.,* Ex. D1, Col. 5, lines 35-37. Moreover, the porous material should be a " thick gauze type adsorbent pad or layer." *Id.,* Col. 2, lines 7-8. During**\*728** the reexamination proceedings, Plaintiff emphasized that the adsorbency of her invention distinguished it from McNair's absorbent invention. *Id.,* Ex. E1, AH 0229 (" Hemphill improves absorbing on the McNair cover sheet because of an adsorbency characteristic" ). According to the patent specifications and Plaintiff's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

previous assertions, the porous material should be secured to the exterior surface of the core member and be composed of adsorbent material.

### 2. Comparison to Accused Devices

After the claims are properly construed, then the terms " must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.,* 15 F.3d 1573, 1576 (Fed.Cir.1993). " In order for there to be infringement, each and every limitation set forth in a patent claim must be found in the accused device, either literally or under the doctrine of equivalents." *Bell Atlantic Network Services, Inc. v. Covad Comm. Group, Inc.,* 92 F.Supp.2d 483, 498 (E.D.Va.2000) (citing *Lemelson v. United States,* 752 F.2d 1538, 1551 (Fed.Cir.1985)).

### a. Literal Infringement

[14] Plaintiff offers an advertisement for the accused devices as evidence that Defendant has literally infringed her patent. The advertisement contains these assertions: 1) " an absorbent core pulls fluid in and locks it away" , and 2) " the silky clean cover draws fluid away and helps keep it below the surface to help you feel clean and dry." Paper No. 52, Ex 2. Despite Plaintiff's attempt to portray the elements of her invention in a manner similar to the quoted advertisement, she is unable to prove that each element of her patented invention can be found in the accused devices. A claim of literal infringement requires proof that the accused devices meet every limitation of the properly construed claims, *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1476 (Fed.Cir.1998) " If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211 (Fed.Cir.1998).

[15] First, and foremost, Plaintiff herself has stated that her vaginal swab does not resemble, behave, or function like a sanitary napkin. Each of the accused products is a type of sanitary napkin which lacks the rigid core required in a swab and is not designed for use within the vaginal canal. The accused products are designed " to cover a substantial portion of an undergarment in order to passively collect fluid that flows onto them." Paper No. 46, Ex. B, ¶ 12.

Second, the structure of Plaintiff's invention differs vastly from the accused devices on each element.

Plaintiff's vaginal swab is comprised of a outer housing structure that encloses a core member in first position and exposes the core member and forms a handle for the swab in the second position. The accused devices have an outer wrapping that is discarded once the sanitary napkin is utilized. At most, the discarded wrapper covers the used and soon-to-be discarded napkin. The protective packaging of the accused devices is in no way equivalent to the handle function of the " outer housing" in Plaintiff's invention.

Moreover, Plaintiff asserts that because the accused products have a core pad, they infringe upon her invention. However, the '720 patent clearly specifies that the core member be " fairly rigid" and have an annular band at its base that can fit into the band of the outer housing. The accused products do not have such a structure.

Finally, Plaintiff went to great lengths during the reexamination phase to distinguish the adsorbency characteristic of the porous material used in her invention versus the absorbency characteristic of the *729 McNair patent. Plaintiff, herself, asserts that McNeil's products have an absorbent core, yet, offers absolutely no explanation as to how the porous material can possibly be the same between Plaintiff's invention and the accused devices. Accordingly, Plaintiff has failed to establish that the accused products literally infringe upon her '720 patent.

### b. Doctrine of Equivalents

[16][17] Under this doctrine, a product which does not literally infringe upon the express terms of a patent may nonetheless infringe if there is " equivalence" between the elements of the accused products and the claimed elements of the patent. *Zelinski v. Brunswick Corp.,* 185 F.3d 1311, 1316 (Fed.Cir.1999) (citing *Warner-Jenkinson, Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)). Infringement occurs under this doctrine or equivalents if the difference between the particular element and the claim limitation are " insubstantial." *Id.* A test to determine " insubstantiality" is whether " the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *Id.* at 1316-17 (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

134 F.Supp.2d 719                                              Page 11

134 F.Supp.2d 719

**(Cite as: 134 F.Supp.2d 719)**

END OF DOCUMENT

[18] Once again, Plaintiff has admitted that her invention, a vaginal swab, " does not look or behave like a sanitary napkin" or even " function like a sanitary napkin" Paper No. 46, Ex. E3, AH 0245. Moreover, Plaintiff has failed to offer a single assertion illustrating that the difference between the elements of her invention and the accused devices is only insubstantial. Rather, the evidence establishes the difference is vast. Accordingly, the court shall find that no reasonable jury could find there to be equivalence between the elements of Plaintiff's invention and the accused devices.

### IV. Conclusion

For the foregoing reasons, this court shall GRANT McNeil's Motion for Summary Judgment for Noninfringement.

A separate Order will be entered.

### *ORDER*

For the reasons stated in the foregoing Memorandum Opinion, it is this _____ day of March, 2001, by the United States District Court for the District of Maryland, ORDERED that:

1. Johnson & Johnson Consumer Companies, Inc.'s Motion for Leave to Permissively Intervene BE, and the same hereby IS, DENIED;

2. McNeil-PPC, Inc.'s Motion for Summary Judgment BE, and the same hereby IS, GRANTED;

3. McNeil-PPC, Inc.'s Motion to Bifurcate BE, and the same hereby IS, DENIED AS MOOT;

4. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Defendant, McNeil-PPC, Inc., and against Plaintiff, Allegra Hemphill; and

5. The Clerk will transmit copies of the Memorandum Opinion and this Order to Magistrate Judge Day, to Plaintiff, and to counsel for the Defendant and proposed intervenor and CLOSE this case.

D.Md.,2001.
Hemphill v. McNeil-PPC, Inc.
134 F.Supp.2d 719

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT
# 2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION

|  |  |
|---|---|
| ALLEGRA D. HEMPHILL, | * |
| **Plaintiff,** | * |
| V. | *    **Civil Action No.** |
| Serve | * |
| PROCTER & GAMBLE CO. | * |
| and serve | * |
| KIMBERLY CLARK CORPORATION | * |
| **Defendant(s).** | * |
|  | * |

**********************************************************************

## I. PLAINTIFF'S PATENT INFRINGEMENT COMPLAINT

Plaintiff, Allegra D. Hemphill, (hereinafter "Plaintiff") complains against

Defendant, Procter & Gamble Co. and Defendant, Kimberly-Clark Corporation

(hereinafter "Defendant(s)") as follows:

## II. JURISDICTION AND VENUE

1. This action arises under the patent laws of the United States, Title 35 of the

United States Code §112.

2. This Court has jurisdiction based upon the Patent laws of the United States, Title 35, United States Code §112 and by Title 28, United States Code §1338: Patent Infringement.

3. Venue in this Court is proper as to Defendants pursuant to 28 U.S.C.§1400.

4. Plaintiff, is a citizen of the United States and resident in the State of Maryland.

5. Upon information and belief, Defendant is a corporation, manufacturer and/or distributor. Defendant has committed acts of infringement and causes' others to commit acts of infringement. Defendant does substantial business in this District so that venue is proper as to Defendant(s).

## III. INTELLECTUAL PROPERTY

6. The United States Letters Patent 4,557,720 ("hereinafter '720 patent") has the title "Vaginal Applicator" which entitles a vaginal swab, dully and legally issued to Plaintiff on December 10, 1985 in the United States Patent and Trademarks Office (hereinafter "USPTO"). Plaintiff is, and continues to be the exclusive inventor and owner. A copy of the '720 patent is included herewith in **Plaintiff's Exhibit A**, pg.401-408.

7. On January 26, 1999, the Reexamination Certificate was dully and legally issued to Plaintiff. Plaintiff owns and at all times owned the '720 patent and by rights,

-2-

has standing to sue for '720 patent infringement. A copy of the '720 Patent

Reexamination Certificate is included in **Plaintiff's Exhibit B**, pg. 616-617.

## IV. INTELLECTUAL PROPERTY ALLEGATIONS

8.  Upon information and belief, Defendant is infringing the '720 patent and

continues to market and sell the accused products alleged by Plaintiff to infringe the

aforesaid patent.

9.  The '720 patent, properly names Plaintiff as inventor and patent owner and

includes **independent claim 1**.  See '720 patent in Exhibit A, pg. 401-408.

**Claim 1 reads**: *'A vaginal swab comprised of an outer housing having a closed*

*and open end on opposing ends thereof, said housing including an annular band*

*defining said open end and a plurality of frangible seams that together define a pair of*

*removable members and a pair of housing segments hingably secured to said annular*

*band following removal of said removable members, a swab core member having a*

*predetermined exterior shape said core member having an annular base with an outer*

*diameter equal to the inner diameter of said annular band and an adsorbent member*

*secured to said core member, said core member being secured within said housing so*

*that said adsorbent member is enclosed therein.*

-3-

## A. INFRINGEMENT ANALYSIS FIRST STEP

The Defendants are infringing claim 1 in the '720 patent **"An infringement analysis requires _two_ separate steps."** Maxwell v. J. Baker Inc., 86 F3d. 1098 (Fed. Cir. 1996) 1105. "The first step is determining the meaning and scope of the patent claims asserted to be infringed. Markman v. Westview Instruments, Inc., 52 F3d. 967, (Fed. Cir. 1995) 979 (en banc), aff'd.

The asserted claim is claim 1 in the '720 Patent. Claim 1 is directed to species #4 in Col. 5, ll. 28 through Col. 6, ll. 58, figures 8 and 9 in the '720 patent. In the prosecution history, claim 1 is patentable over the prior art cited against species #1, figure 1,2 and 2a in the '720 patent. This embodiment has 'an exterior cover, an internal tubular member, and rotatable base' in Col. 3, ll. 21-23 which was overcome in the elected species #4. "Remarks" regarding structure in the prior art Gelardin 2,393,677 patent as "a rotatable base by means of twisting a knob" were directed to a **non-asserted** canceled claim #3.[1] See Ex. A, pg. 528.

---

[1] The USPTO objected to new material under 35 U.S.C.§ 132. See Paper #10 in Ex. A, 516-520. See 35 U.S.C. .§ 132 in Ex. B, pg.624. The new material filed on May 14, 1984 was not entered and thus, no amendments were made in the patent application 619,684. See Ex. A, 516-528.

-4-

The USPTO cited the prior art Alvarez '811 patent to clarify *the way* of absorbing. Alvarez '811 patent had only one fiber. The asserted claim 1 "reads to" an adsorbent member. To ascertain an adsorbency characteristic is to actually see *at least two fibers* working together which helps improves absorbing. 'However it is important to employ a highly absorbent material and accordingly, any such materials could be used as the absorbent material,' see Col. 3, ll. 65-68 in the '720 patent. "Indeed, prosecution history is a proper claim construction tool. However, [t]he prosecution history can and should, **where relevant**, be assessed (along with, e.g., claim language and specification) in properly interpreting claim language." Alpex Computer Corp. v. Nintendo Co., 102 F.3d. 1214 (Fed. Cir. 1996) 1220 at IV.

The asserted claim 1 in the '720 patent was claim 5 in the patent application 619,684. See Ex. A, pg. 435, 533 and 534 at paragraph 4. **No amendments** were made to claim 5 in the patent application See Ex. A 500, 516 and **no amendments** were made to the asserted claim 1 in the '720 patent during reexamination. Ex. A, pg.16-17. In other words, any and all statements made by the applicant **did <u>not</u>** narrow the claim **nor** limit the scope. Thus, "While the invention has been

described in connection with what is presently considered to be the most practical and preferred . . . it is not to be limited . . . but is intended to cover various modifications and equivalent arrangements included in the spirit and scope of

-5-

claims . . . which scope is to be accorded the broadest interpretation so as to encompass all such modifications and equivalent structures" See Col. 6, ll. 49-58 in the '720 patent specification.

The United States Patent Law under 35 U.S.C.§ 112, states in part:

"The specification shall contain a written description of the invention, . . . in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated . . . " Ex. B, pg. 623.

"It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed." "Thus, the court starts the decision-making process by reviewing the same resources as would that person." Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, (Fed. Cir. 1998) 1477at [5].

The mandatory statute 35 U.S.C. §112, **states in pertinent part:**

'The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his [or her] invention.' See 35 U.S.C. § 112 in Ex. B, pg. 623.

-6-

The "[c]laim construction begins with reading the words in the claim." <u>Bell Comm. Research, Inc. v. Vitalink Comm. Corp.</u>, 55F3d. 615,(Fed. Cir. 1995) 619-620. Claim 1 reads *"a vaginal swab."* The word 'vaginal' pertains to structure **defined in the claim itself,** in Col.6, ll. 59 through 66. In compliance with 35 U.S.C. §112 (above), **the patent claim is structural.** "It is a well- established axiom in patent law that a patentee is free to be [her] own lexicographer . . . " "Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be [her] own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." <u>Vitronics Corp. v. Conceptronic Inc.</u>, 90 F3d. 1576 (Fed. Cir. 1996) 1582.

The specification in the '720 patent makes an observation: "Accordingly, it is desirable at times to be able to have a convenient disposable... for purposes of...treating the vaginal area." Col. 1, ll. 33-35. "I have found that a truly portable, convenient and disposable ...refreshner is not available." Col. 1, ll. 46-49.

The specification <u>actually</u> **describes** 'in such full, clear, concise and exact terms to enable any person skilled in the art': "**My device**, **as set forth herein**, is comprised of an **outer container** . . . " Col. 1, ll. 66-68.

-7-

("When the meaning of a term in a claim is sufficiently clear from its definition in the specification, that meaning shall apply") <u>Multiform Desiccants, Inc. v. Medzam, Ltd.</u>, 133 F.3d 1473, (Fed. Cir. 1998) 1477. Thus, the word "vaginal" in the asserted claim 1, "reads to" an outer container as an outer housing cover or sheath. [2]  However, if there had been any ambiguity in the specification, it would have been determined via the prosecution history. ("Thus, like the specification, the prosecution history can act like a dictionary.") <u>Hoechst Celanese Corp. v. BP Chemicals, Ltd.</u> 78 F.3d. 1575 (Fed. Cir. 1996), 1578.

The word "swab" is <u>first defined within the claim itself</u>. The word "swab" pertains to the unit in Col. 6, ll.67 through Col. 7, ll. 5. The specification describes the

---

[2] See a <u>container</u> in prior art Laker 4,175,439 patent: ("The container is preferably a flat flexible plastic pouch...and open at one end which permits closing and sealing) in Col. 2, ll. 6-7 (...pulling the sides apart to open the container" in Col. 2, ll. 22 "..container as received is flat and closed" in Col. 2, ll. 17 in Ex. A, pg. 497.

See an <u>outer housing</u> in prior art Bower 4,159,718 patent in Col. 1, ll. 29-31. ("...comprising two rectangular sheets ...") in Col. 1, ll. 57-58 Ex. A, pg. 490.

See a <u>cover</u> in prior art Johansson 4,165,942 patent: ("...before taking implement into use...protective cover which can be opened up at one end ...and folded back to expose..") in Col. 1, ll. 48-55 in Ex. A, pg. 494.

See a <u>sheath</u> in Schuster 4,157,709: "comprises an outer sheath, an intermediate tube slidable there within...to collect mucus.."). Col. 2, ll. 60-66. Ex. A, pg.485.

swab portion as *"preferably*...fairly rigid inner core member, constructed either in segments or a one-piece unit . . . adsorbent pad or layer is secured" in Col. 2, ll. 5-8. Structure will be at, or around the base of a core member in Col. 5, ll. 36-38.  Hence, the unit is "compact, easily manufactured . . . portable, disposable . . . carriable and usable" which is established via materials in the prosecution history. See Col. 3, ll. 15-18.

'The container is *preferably* made from... polyethylene or any one of the other polyolefins or from thermoplastics.  Core...can be made from the same material in Col. 3, ll. 60-65. The terms for 'preferably' and 'fairly' are made known in the prosecution history. [3]  For this reason, it is important to <u>remember</u> the USPTO <u>does</u> <u>not</u> <u>deny</u> claim 1 in the '720 patent preference in structure as 'inner core member'.[4] See Ex. B, pg. 615.

─────────────

[3] A dictionary definition tenders a stick  however, a ring at or around the base of a core member can also include such materials as: ("...natural and synthetic rubber... polyesters... polyethylene ...)," in prior art Schopflin 4,155,991 patent in Col. 4, ll. 41-51 in Ex. A, pg. 473.

    See prior art Bower 4,159,718 patent:  "...may comprise two layers of paper... [or] a soft molded plastic" in Col. 2, ll. 24-29 and see Col. 2, ll. 46. Ex. A, pg. 490.

    See  prior art Fielding 3,731,682 patent: ("...in lieu of a ribbon, an appropriate string or cord may be employed") in Col. 4, ll.35-40. Ex. A, pg. 462.

[4] The prior art Srininvasan '567 patent teaches a <u>core member</u>: ("...may comprise a fluid impermeable sheet material such as polyethylene or polypropylene cellophane or other similar films"). Col. 4, ll.5-12. See Ex. A,  pg. 574.

-9-

"An analysis of intrinsic evidence alone will resolve any ambiguity in a disputed term" Vitronics Corp. v. Conceptronic Inc., 90 F3d. 1576, 1582. In this way, both the specification and prosecution history are applicable for fully understanding the meaning and scope in claim 1. ("... entitled to rely on the record made in the Patent Office in determining the meaning and scope of the patent"), see Lemelson v. General Mills Inc. 968 F, 2d. 1202 (Fed. Cir. 1992) on page 1208. "These documents have legal as well as technological content, for they show not only the framework of the invention as viewed by the inventor, but also issues of patent ability as viewed by the patent examiner." Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, (Fed. Cir. 1998) 1477at[5].

In the asserted claim 1, the above meaning for the name "vaginal swab" is admissible. The word "swab" pertains to the unit in Col. 6, ll.67 through Col. 7, ll. 5. The word "vaginal" pertains to outer housing as a container, cover or sheath. The word "vaginal" defined as 1). of or relating to vagina  2). Relating to or resembling a sheath *is quoting* American Heritage College Dictionary, 1488 (3rd ed. 1993).  Any extrinsic evidence defining "vaginal" as *'limited'* to entering the vaginal canal contradicts case law: ("...intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.") Vitronics Corp. v. Conceptronic, Inc., 90 F3d. 1576 (Fed. Cir 1995) 1582. The patent claim is structural. The secondary dictionary definition for

-10-

the word 'vaginal' as a "sheath" is 'to encase or cover with', *quoting* American Heritage College Dictionary, 1254 (3rd ed. 1993) 1254. Thus, claim construction must not be a matter of *choosing* to limit the claim via extrinsic evidence.[5] Claim construction begins with *reading* the claim.

Extrinsic evidence via dictionary definitions is included for guidance. See Dorland's Medical Dictionary 1617 (28th ed. 1994 defining "swab" as a wad of cotton or other absorbent material firmly attached to a stick or wire . . . "). See American Heritage College Dictionary Third Edition, 1993 page 1369 which defines a "swab" as "a small piece of absorbent material on the end of a stick or wire, used for cleansing or applying medicine."[6] ("...the court has numerous sources it may utilize for guidance." Vitronics Corp. v. Conceptronic Inc., 90 F3d. 1576 (Fed. Cir. 1996) 1582.

---

[5] An accused device may be *limited* to entering the vaginal canal, but focusing claim construction on an accused device is limiting the asserted claim 1.

[6] A court may observe a dictionary for guidance but this definition should not change the legally operative meaning for a word already defined in the claim.

-11-

Decisions by the USPTO are **for guidance**. Decision in the USPTO is a reliable authority. "As such, the record before the Patent and Trademark Office is often of critical significance in determining the meaning of claims." Vitronics Corp. v. Conceptronic, Inc., 90 F3d. 1576 (Fed. Cir 1996) 1582 at [9-11].

The '720 patent made **structural improvements to claim** *a vaginal swab*. The prior art patents did not have all the components to be a *vaginal swab* in claim 1. In fact, the '720 patent has undertaken two requests for reexamination.

The USPTO decided the prior art McNair '343 patent raises no substantial new question of patentability in the asserted claim 1 on July, 6, 1998. The USPTO found the '343 patent as not being relevant under 35 U.S.C.§ 102 and not relevant under 35 U.S.C. §103.[7] Ex. B, pg. 601-603. The '720 patent was reexamined and confirmed despite the prior art Srininvasan '567 patent on January 26, 1999. With respect to the asserted the claim 1, the USPTO decided: 'Srininvasan simply does not disclose. . . an open end opposite a closed end, an annular band, and frangible seams'. Ergo, the '567 patent left the sides of "a wrapper" wide-open which is unacceptable as "outer housing" in claim 1

---

[7] The prior art McNair '343 patent has no outer housing. The USPTO decided "McNair discloses none of the structural features recited, supra." Ex. B, pg. 601-603.

-12-

in the '720 patent.[8] The '567 patent failed to have structure as *"an annular base"* and "an *outer housing"* is also absent in the asserted claim 1.


As a result of reexamination, the patentability of claim 1 and 2 was <u>confirmed</u>. NO AMENDMENTS HAVE BEEN MADE TO PATENT. Therefore, any statements made by a Defendant in opposition to this fact, would be "telling " a flat-out falsehood. Ex. B, pg. 616- 617.

---

[8] <u>Read</u> the despicable instructions for handling a wrapped 'sanitary napkin' in the '567 patent, Col. 6, ll.49-68 <u>and</u> Col. 7, ll. 17-35 in Ex. A, pg. 575-576. Only a vaginal swab has <u>all</u> the components so as <u>not</u> to behave, operate or function like that.

-13-

## B. INFRINGEMENT ANALYSIS SECOND STEP

"The second step is comparing the properly construed claims to the device accused of infringing." <u>Markman v. Westview Instruments, Inc.,</u> 52 F3d. 967, (Fed. Cir. 1995) 979 (en banc), aff'd. "To literally infringe, the accused device must contain every limitation [element] of the asserted claim." <u>Maxwell v. J. Baker, Inc.</u> 86 F3d. 1098, (Fed. Cir. 1996) 1105.

The Defendant will not avoid the infringement by <u>any</u> disguise. See in the '720 patent specification at Col. 6, ll. 28-32:

"While segments . . . have been shown as comprising cylindrical type segments, **the actual design** . . . can be modified as desired so that resulting shape . . . can be varied." Likewise, a core member and structure at or around the

base may have many designs, from north to south $\left(\updownarrow\right)$ <u>or</u>

east to west $\left(\leftrightarrow\right)$. See rings in prior art Schopflin '991 patent in Ex. A, pg. 470-471.



-14-

A vaginal swab protects the unit better *"an annular band defining said open end."* *See* tapering at Fig. 1, in prior art Johansson '942 patent, in Ex. A, pg. 493. *See* at Fig. 5 in prior art Laker '439 patent in Ex A, pg.496.  Within an envelope, side 1 and side 2 *defines a pair of removable members* which are together until sides are 'essentially peeled away from an enclosing protecting relationship in Col. 2, ll. 18-22', see as claim 1 requires *"a pair of hinged housing segments defined by a plurality of frangible seams."*

↔A *swab core member* as a fluid impermeable ring [9] can be covered with at least one layer of a porous material.[10]An adsorbent member or padding does not fully cover-up the structure at, or around the base (an annular base) which adapted or adjusts within a cover, container, outer housing or sheath, as claim 1 reads *"outer diameter equal to inner diameter,"* see Col. 5, ll. 43–49. The unit is in place until ready for use. All together, *a vaginal swab* is guaranteed to help improve absorbing.

---

[9] *"A predetermined exterior shape"* as the word "predetermined"is para. in American Heritage College Dictionary, Third Edition, 1993 on page 1077: 1) to determine, decide or establish in advance  2) to influence or sway;  predispose.

[10] *"An adsorbent member secured to said core member"* is made safe so it is promised not to be misplaced nor mishandled.  Col. 5, ll. 34-37.

The Defendants changed "accused devices" for safety and effectiveness reasons.[11]

Thus, ("If accused matter falls clearly within the claim, infringement is made out and that

should be the end of it.") See Lipscomb's Walkers On Patents. §22:25, on page 423.

The court/jury will be reminded of the fact that ("One who seeks to pirate an invention .

. . may be expected to introduce minor variations to conceal and shelter the piracy.")

Lourie Implement Co. v. Lenhart, 130 F 122 (1904 CA8,Iowa) .  It does not avoid the

infringement.


10.  The accused products designate at least, under the names: Kotex ® Poise ® by

Kimberly-Clark Corporation and Always ® by Procter & Gamble Co.


## COUNT I:   PATENT INFRINGEMENT AND

## REEXAMINATION CERTIFICATE

11.  Plaintiff hereby incorporates each allegation by reference of paragraphs 1-10,

as set forth herein.

---

[11] In the asserted claim 1, the named vaginal swab should be construed as structural.

12. Upon information and belief, Defendant has infringed and continues to infringe the claims of the '720 patent, using the invention claimed in the '720 patent and/or made according to the invention claimed in the '720 patent by making, using, selling and/or offering for sale a vaginal swab in violation of U.S.C. §271 (a, b).

13. Defendant is infringing the '720 patent, as originally issued and reexamine within the scope of the '720 patent, exemplified by, but not limited to Kotex ®, Poise ® by Kimberly-Clark Corporation and Always ® by Procter & Gamble Co. and will continue to do so unless enjoined by this court.

14. On information and belief, said infringement of the '720 patent and is willful and continues to be willful.

## PRAYER FOR RELIEF

15. Plaintiff is entitled to recover damages sustained as a result of Defendant's infringing acts, including profits, with interest and reasonable one half royalty (50%).

16. As a result of Defendants' acts of infringement aforesaid, Plaintiff has suffered irreparable injury, and will suffer further irreparable harm unless said infringement is enjoined.

17. Defendants were notified of Plaintiff's rights in the '720 patent. Defendants have full knowledge of those rights and willfully proceeds to infringe in disregard of

-17-

Plaintiff's rights.

WHEREFORE, Plaintiff prays for judgement against Defendant and prays for relief as follows:

18.  Judgement the '720 patent be enforced in this court.

19.  Judgement that Defendants be held to have infringed the United States Letters Patent 4,557,720.

20.  Judgement, the Plaintiff be awarded profits or one half royalty (50%) is reasonable.

21.  Judgement required an accounting for all gains, and advantages derived from Defendant acts of infringement.

23.  Judgement, trebling the damages awarded.

24.  Judgement that Defendants be ordered to pay over to Plaintiff all damages due to such acts of patent infringement and that prejudgement interest be imposed upon such damages, and awarding punitive and exemplary damages against Defendant.

25.  Judgment awarded costs and attorney's fees against Defendant.

36.  Judgment awarded such other, further, and different relief as the court may deem just and proper.

Plaintiff respectfully demands trial by jury.

-18-

Respectfully submitted,

*Allegra Hemphill*

**Allegra Hemphill,** *pro se*

**6217 Charnwood Drive**

**Rockville, Maryland 20852**

**(301) 897-2030**

**Date : November 18, 2002**

## PROOF OF SERVICE

I, ALLEGRA D. HEMPHILL, do declare that on this 18th day of November 2002, as required under Federal Rules of Civil Procedure 4(h), I have served  PLAINTIFF'S PATENT INFRINGEMENT COMPLAINT

and PLAINTIFF'S EXHIBITS (A) and EXHIBITS (B) IN

PLAINTIFF'S PATENT INFRINGEMENT COMPLAINT.

via express mail, on the parties to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents in the United Stated mail, properly addressed to them and with postage prepaid.

In compliance with Federal Rules of Civil Procedure 4(h), the names and addresses of the above corporations served, are as follows:

**PROCTER & GAMBLE CO.**

One Procter & Gamble Plaza

Cincinnati, Ohio 45202

Attn.: Mr. James Johnson, Chief Legal Officer

Legal Department                    Tel. 513 983-1100,

**Procter & Gamble Distributing Company**

525 Vine Street

Cincinnati, Ohio 45202                    Tel. 513 983-1100

**Primary Law Firm** Dinsmoore & Shohl LLP

255 East 5th Street

Cincinnati, Ohio 45202                    Tel. 513 977-8200

-20-

and    **Kimberly-Clark Corporation**

    World Headquarters

    Irving, Texas 75014                 Tel. 920 721 - 2000


    **Kimberly-Clark Corporation**

    Headquarters

    401 North Lake Street

    Neenah, Wisconsin 54956          Tel. 920 721 - 2000


**Primary Law Firm:**  Sidley & Austin

             717 North Harwood Street

             Dallas, Texas 75201       Tel. 214 981-3300


I declare under penalty of perjury that the foregoing is true and correct. Executed on the 18th day of November, 2002.


                  Respectfully submitted,

                  *Allegra Hemphill*

                  Allegra Hemphill, *pro se*

                  6217 Charnwood Drive

                  Rockville, Maryland 20852

                  (301) 897-2030

                  Date : November 18, 2002

EXHIBIT
3

Westlaw.

258 F.Supp.2d 410

258 F.Supp.2d 410

**(Cite as: 258 F.Supp.2d 410)**

**H**

Hemphill v. Procter & Gamble Co.
D.Md.,2003.

United States District Court,D. Maryland.
Allegra D. HEMPHILL
v.
PROCTER & GAMBLE CO., et al.
**No. CIV.A. DKC2002-3736.**

April 15, 2003.

Patent holder brought action against manufacturers of personal care products, alleging infringement claims. Defendants counterclaimed for declaratory judgment of noninfringement and moved for summary judgment. The District Court, Chasanow, J., held that: (1) patent holder was collaterally estopped from arguing for new construction of patent claim terms; (2) sanitary napkins did not literally infringe on vaginal swabs patent; (3) tampons did not literally infringe on vaginal swabs patent; and (4) patent holder failed to demonstrate that patent was infringed under doctrine of equivalents.

Motion granted.
West Headnotes
**[1] Patents 291 ☞323.2(2)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k323 Final Judgment or Decree
                291k323.2 Summary Judgment
                    291k323.2(2) k. Presence or Absence of Fact Issues. Most Cited Cases
Although a patent infringement analysis usually involves both questions of fact and law, summary judgment of noninfringement may still be proper.

**[2] Patents 291 ☞323.2(2)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k323 Final Judgment or Decree
                291k323.2 Summary Judgment
                    291k323.2(2) k. Presence or Absence of Fact Issues. Most Cited Cases

Good faith dispute about the meaning and scope of asserted patent claims does not, in and of itself, create a genuine dispute to preclude summary judgment in patent cases.

**[3] Patents 291 ☞226.6**

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
            291k226.5 Substantial Identity of Subject Matter
                291k226.6 k. Comparison with Claims of Patent. Most Cited Cases
To assess claims of noninfringement, the court must engage in a two-step infringement analysis: the first step is determining the meaning and the scope of the patent claims asserted to be infringed, and the second step is comparing the properly construed claims to the device accused of infringing.

**[4] Patents 291 ☞165(1)**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(B) Limitation of Claims
            291k165 Operation and Effect of Claims in General
                291k165(1) k. In General. Most Cited Cases

**Patents 291 ☞167(1)**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(B) Limitation of Claims
            291k167 Specifications, Drawings, and Models
                291k167(1) k. In General. Most Cited Cases

**Patents 291 ☞168(2.1)**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(B) Limitation of Claims

258 F.Supp.2d 410

258 F.Supp.2d 410

(Cite as: 258 F.Supp.2d 410)

291k168 Proceedings in Patent Office in General
291k168(2) Rejection and Amendment of Claims
291k168(2.1) k. In General. Most Cited Cases

**Patents 291 ☞314(5)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k314 Hearing
291k314(5) k. Questions of Law or Fact. Most Cited Cases
Patent claim construction is correctly a matter of law for the court to decide; when construing a claim, a court should look to the intrinsic evidence, i.e., the patent itself, its claims, written description, and the prosecution history.

**[5] Patents 291 ☞168(1)**

291 Patents
291IX Construction and Operation of Letters Patent
291IX(B) Limitation of Claims
291k168 Proceedings in Patent Office in General
291k168(1) k. In General. Most Cited Cases
Statements made during the reissue, or reexamination, proceeding are relevant prosecution history when interpreting patent claims.

**[6] Patents 291 ☞168(2.1)**

291 Patents
291IX Construction and Operation of Letters Patent
291IX(B) Limitation of Claims
291k168 Proceedings in Patent Office in General
291k168(2) Rejection and Amendment of Claims
291k168(2.1) k. In General. Most Cited Cases
Prosecution history need not relate to the particular patent claim at issue in a case in order to be relevant in noninfringement action, so long as the prosecution history in question relates to the same claim term as in the asserted claims.

**[7] Judgment 228 ☞713(1)**

228 Judgment
228XIV Conclusiveness of Adjudication
228XIV(C) Matters Concluded
228k713 Scope and Extent of Estoppel in General
228k713(1) k. In General. Most Cited Cases
There are four factors that must be met for collateral estoppel to apply: (1) the issue was identical to one decided in an earlier action; (2) the issue was actually litigated in the earlier action; (3) resolution of the issue was essential to a final judgment on the merits; and (4) the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.

**[8] Patents 291 ☞327(13)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k327 Operation and Effect of Decision
291k327(13) k. Matters Concluded. Most Cited Cases
Where a determination of the scope of the patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims.

**[9] Patents 291 ☞327(13)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k327 Operation and Effect of Decision
291k327(13) k. Matters Concluded. Most Cited Cases
Patent holder was collaterally estopped from arguing for new construction of patent claim terms " vaginal swab," " outer housing," and " core member" ; although terms had been construed in patent holder's prior action brought under another patent claim, the claims underlying instant action and prior action were both structural and nothing in patent required that terms be given different construction in different claims.

**[10] Patents 291 ☞165(5)**

291 Patents

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

258 F.Supp.2d 410

258 F.Supp.2d 410

**(Cite as: 258 F.Supp.2d 410)**

291IX Construction and Operation of Letters Patent
    291IX(B) Limitation of Claims
        291k165 Operation and Effect of Claims in General
            291k165(5) k. Construction of Particular Claims as Affected by Other Claims. Most Cited Cases
Unless the patent provides otherwise, a claim term cannot be given a different meaning in various claims of the same patent.

**[11] Patents 291 ☞226.6**

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
        291k226.5 Substantial Identity of Subject Matter
            291k226.6 k. Comparison with Claims of Patent. Most Cited Cases
Claim of literal patent infringement requires proof that the accused devices meet every limitation of the properly construed claims; if even one limitation is missing or not met as claimed, there is no literal infringement.

**[12] Patents 291 ☞235(2)**

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
        291k233 Patents for Machines or Manufactures
            291k235 Identity of Principle or Mode of Operation
            291k235(2) k. Particular Patents or Devices. Most Cited Cases
Sanitary napkins did not function as " vaginal swabs," and thus did not literally infringe on patent for vaginal swabs; sanitary napkins were intended to cover a portion of undergarment to passively collect fluid, were not designed for internal vaginal use, did not consist of a piece of absorbent material attached to the end of a stick, did not have an outer housing structure designed to be used as a handle, and napkins were not " fairly rigid."

**[13] Patents 291 ☞235(2)**

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement

        291k233 Patents for Machines or Manufactures
            291k235 Identity of Principle or Mode of Operation
            291k235(2) k. Particular Patents or Devices. Most Cited Cases
Tampons did not literally infringe upon patent for vaginal swab; although tampons were intended for internal vaginal use, they were not swabs, strings attached to tampons allowed only for removal, rather than manipulation of tampons, tampons did not have an " outer housing" structure designed to be used as a handle, and tampon applicator was designed to be completely removed and thrown away.

**[14] Patents 291 ☞237**

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
        291k233 Patents for Machines or Manufactures
            291k237 k. Substitution of Equivalents. Most Cited Cases
Patent holder failed to demonstrate that differences between elements in claims of patent for vaginal swab and tampons and sanitary napkins were insubstantial, as required to support infringement claim under doctrine of equivalents; each accused product lacked numerous structural limitations of the patent and served different function, and patent holder admitted that the vaginal swab did not look, behave, or function like a sanitary napkin.

**[15] Patents 291 ☞237**

291 Patents
    291XII Infringement
        291XII(A) What Constitutes Infringement
        291k233 Patents for Machines or Manufactures
            291k237 k. Substitution of Equivalents. Most Cited Cases
Under the doctrine of equivalents, a product which does not literally infringe upon the express terms of a patent may nonetheless infringe if there is equivalence between the elements of the accused products and the claimed elements of the patent.

**[16] Patents 291 ☞237**

291 Patents
    291XII Infringement

258 F.Supp.2d 410                                                                Page 4

258 F.Supp.2d 410

**(Cite as: 258 F.Supp.2d 410)**

<u>291XII(A)</u> What Constitutes Infringement
    291k233 Patents for Machines or Manufactures
        291k237 k. Substitution of Equivalents.
<u>Most Cited Cases</u>
Patent infringement occurs under the doctrine of equivalents if the difference between the particular element and the claim limitation are insubstantial; a test to determine insubstantiality is whether the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation.

**Patents 291 ☞328(2)**

<u>291</u> Patents
    <u>291XIII</u> Decisions on the Validity, Construction, and Infringement of Particular Patents
        <u>291k328</u> Patents Enumerated
            <u>291k328(2)</u> k. Original Utility. <u>Most Cited Cases</u>
<u>4,557,720</u>. Not Infringed.

*412 <u>Kenneth R. Adamo</u>,Jones Day, Cleveland, OH, William H. Baumgartner, Jr., Sidley Austin Brown and Wood, Chicago, IL, <u>Russell E. Cass</u>, Sidley Austin Brown and Wood, Chicago, IL, <u>Blaney Harper</u>, Jones Day, Washington, DC, <u>Michael B. MacWilliams</u>, <u>George F. Pappas</u>, Venable Baetjer and Howard LLP, Baltimore, MD, <u>David M. Maiorana</u>, <u>Joseph D. Pollack</u>, Jones Day, Cleveland, OH, <u>Virgil Bryan Medlock, Jr.</u>, Sidley Austin Brown and Wood, Dallas, TX, <u>James P. Ulwick</u>, Kramon and Graham, Baltimore, MD, for Defendants.

**MEMORANDUM OPINION**
<u>CHASANOW</u>, District Judge.
Presently pending and ready for resolution are the motions for summary judgment of noninfringement filed by Defendants Kimberly-Clark Corporation (" Kimberly-Clark" ) and The Procter & Gamble Co. (" Procter & Gamble" ), as well as Defendants' counterclaims for declaratory judgments of noninfringement. The issues have been fully briefed, and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court shall grant Defendants' motions for summary judgment and dismiss the counterclaims without prejudice.

**I. Background**

**A. Procedural History**

This is the second lawsuit brought in this court by Plaintiff Allegra D. Hemphill against manufacturers of personal care products for alleged infringement of her <u>U.S. Patent No. 4,557,720</u> (the " '720 patent" ). In the first lawsuit, <u>Hemphill v. McNeil-PPC, Inc.</u> (" Hemphill I" '), Plaintiff alleged that the defendant's STAYFREE and CAREFREE feminine sanitary napkins and SERENITY adult napkins products infringed claim 2 of her <u>'720 patent</u>. In that case, after ruling on the meaning of the claim terms and concluding that the accused products do not infringe claim 2 of <u>the '720 patent</u>, the court granted the defendant's motion for summary judgment. <u>See Hemphill v. McNeil-PPC, Inc., 134 F.Supp.2d 719 (D.Md.2001)</u>. The Court of Appeals for the Federal Circuit affirmed the decision on November 27, 2001 in an unpublished opinion. <u>25 Fed.Appx. 915 (Fed.Cir.2001)</u>.

In November 2002, Plaintiff filed the current action alleging infringement by Kimberly-Clark's KOTEX and POISE product lines and Procter & Gamble's ALWAYS and TAMPAX product lines (" the accused products" ).<u>FN1</u> Products bearing *413 the KOTEX and ALWAYS brand names are feminine sanitary napkins, products bearing the KOTEX SECURITY and TAMPAX names are tampons, and those bearing the POISE brand name are adult napkins.<u>FN2</u> Defendants Kimberly-Clark and Procter & Gamble filed separate motions for summary judgment of noninfringement with regard to their accused products. Each Defendant has asserted a counterclaim for a declaratory judgment of noninfringement, but has said that it would consent to dismissal without prejudice of the counterclaim if its motion for summary judgment is granted.

> <u>FN1.</u> Although TAMPAX is not expressly mentioned in the complaint, Plaintiff's opposition suggests that she regards TAMPAX as an accused product, and Procter & Gamble has included the product in its summary judgment motion. See Paper no. 32, at 29; Ex. C3. Accordingly, the court will include TAMPAX in this opinion. The court will not, however, rule on Procter & Gamble's summary judgment motion with respect to the ALLDAYS pantiliner product and the ENVIVE miniform product which are not mentioned anywhere by Plaintiff, but are included by Defendant " for the sake of completeness." The opinion will be limited to the allegedly infringing products actually

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

258 F.Supp.2d 410

258 F.Supp.2d 410

(Cite as: 258 F.Supp.2d 410)

Page 5

before the court.

> FN2. Plaintiff's complaint accuses Kimberly-Clark's KOTEX products of infringement, but does not make clear whether she is referring to KOTEX sanitary napkins, KOTEX SECURITY tampons, or both. Her opposition, while not a model of clarity, suggests that she is accusing both types of products. The court's infringement analysis will therefore include both KOTEX sanitary napkins and KOTEX SECURITY tampons.

### B. Background of the '720 Patent

Plaintiff filed her application for the '720 patent with the Patent and Trademark Office (" PTO" ) on June 11, 1984, and her patent was subsequently issued on December 10, 1985. *See* Paper no. 1, Ex. A. Bearing the title " Vaginal Applicator" , the '720 patent describes a disposable vaginal swab or refresher meant either to cleanse or to treat the vaginal area with fragrances, medications, germicides, or deodorants. *Id.,* Ex. A, Col. 1, lines 33-38. The '720 patent has two independent claims, but only claim 1 is at issue in this litigation. The description contained in claim 1 of the Applicator is as follows:
1. A vaginal swab comprised of an outer housing having a closed and open end on opposing ends thereof, said housing including an annular band defining said open end and a plurality of frangible seams that together define a pair of removable members and a pair of housing segments hingably secured to said annular band following removal of said members, a swab core member having a predetermined exterior shape, said core member having an annular base with an outer diameter equal to the inner diameter of said annular band and an adsorbent member secured to said core member, said core member being secured within said housing so that said adsorbent member is enclosed therein.

*Id.,* Ex. A, Col. 6, line 1-Col. 7, line 5.

Claim 2, which was the claim at issue in *Hemphill I,* provides as follows:
2. a vaginal swab comprising an outer housing including an inner case member and an outer case member at least part of which is connected to and said overlies inner case member; a core member, at least one layer of porous material secured to said core member, and housing means for both supporting and

enclosing said core member, said core member being secured to said housing means, having at least two portions movable relative to one another between first and second positions for enclosing said core member when in said first position and for both, exposing said core member and the said porous padding secured thereto and for forming a handle for said swab when in said second position.

*Id.,* Ex. A, Col. 7, line 6-Col. 8, line 10.

In addition to claiming a " vaginal swab," both claims require the " outer housing" **\*414** and " core member" that were construed by the court in *Hemphill I.*[FN3]

> FN3. For a description of the prosecution history of the '720 patent and reexamination proceedings, see *Hemphill I, 134 F.Supp.2d at 721-23.*

### C. Accused Products

KOTEX sanitary napkins, ALWAYS sanitary napkins, and POISE adult napkins are sold in bags or boxes containing multiple napkins, which are individually wrapped in plastic. *See* Declaration of Herbert E. Grube, Paper no. 22, Ex. A1, ¶ 5 (" Grube Decl." ); Declaration of Mary Jo Meyer, Paper no. 22, Ex. A2, ¶ 5 (" Meyer Decl." ); Declaration of Thomas W. Osborn III, Paper no. 23, Ex. 2, ¶ 4 (" Osborn Decl." ). The sanitary napkins are composed of an absorbent core material placed between a flexible liquid-pervious topsheet and a liquid-impervious plastic backsheet that has an adhesive on the outside for attaching the napkin to an undergarment. *See* Grube Decl. ¶ 6; Meyer Decl. ¶ 6; Osborn Decl. ¶¶ 4-5. The side of the plastic backsheet containing the adhesive has a thin paper sheet attached to it to protect the adhesive. *See* Grube Decl. ¶ 6; Meyer Decl. ¶ 7; Osborn Decl. ¶ 5.

In order to use the sanitary napkins, the consumer removes the plastic wrapper from the product, peels off the thin paper sheet, and affixes the adhesive side to the undergarment. *See* Grube Decl. ¶ 7; Meyer Decl. ¶ 8; Osborn Decl. ¶¶ 6,7. The napkins are intended to passively collect fluid during use. *See* Grube Decl. ¶ 9; Meyer Decl. ¶ 10; Osborn Decl. ¶ 7. The napkins are not designed to be used or placed internally into the vagina. *See* Grube Decl. ¶ 11; Meyer Decl. ¶ 12; Osborn Decl. ¶ 9. After use, the consumer removes the napkin from the undergarment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 6

and discards it, either directly or by first wrapping it in the plastic wrapper of the next napkin. *See* Grube Decl. ¶ 8; Meyer Decl. ¶ 9; Osborn Decl. ¶ 8.

KOTEX SECURITY tampons and TAMPAX tampons are also generally sold in bags or boxes containing multiple individually-wrapped tampons. *See* Grube Decl. ¶ 16; Osborn Decl. ¶ 21. Each tampon is composed of a piece of absorbent material made from cotton and/or rayon surrounded by a liquid-pervious overwrap. A string is attached to the bottom of the absorbent piece, which is compressed into a plastic applicator. *See* Grube Decl. ¶ 17; Osborn Decl. ¶ 20. To use the tampon, the customer removes the plastic applicator, inserts the applicator into the vagina and expels the tampon from the applicator into the vagina by pressing the inner tube up into the outer tube. *See* Grube Decl. ¶¶ 18,19; Osborn Decl. ¶ 23. The applicator is then removed, leaving the tampon in the vagina to passively collect fluid. *See* Grube Decl. ¶ 19; Osborn Decl. ¶ 23. After use, the consumer removes the tampon by pulling on the string and then discards it either directly or by wrapping the used tampon in the plastic wrapper of the next tampon. *See* Grube Decl. ¶ 20; Osborn Decl. ¶ 23.

## II. Standard of Review

In patent cases, as well as in other cases, a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Alexander,* 85 F.3d 146, 150 (4th Cir.1996). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam,* 810 F.2d at 1286 **\*415** (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 (4th Cir.1998). A properly supported motion for summary judgment may not be defeated by " the mere existence of some alleged factual dispute between the parties." *Anderson,* 477 U.S. at 247-48, 106 S.Ct. 2505. Further, while the

court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, the requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Social Services,* 901 F.2d 387, 391 (4th Cir.1990); *Beaudett v. City of Hampton,* 775 F.2d 1274, 1277 (4th Cir.1985).

[1][2] Although an infringement analysis usually involves both questions of fact and law, summary judgment of noninfringement may still be proper. *Nike, Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed.Cir.1994); *Chemical Eng'g Corp. v. Essef Indus. Inc.,* 795 F.2d 1565, 1571 (Fed.Cir.1986). A good faith dispute about the meaning and scope of asserted claims does not, in and of itself, create a genuine dispute to preclude summary judgment in patent cases. *Lantech, Inc. v. Keip Mach. Co.,* 32 F.3d 542, 546 (Fed.Cir.1994).

## III. Analysis

[3][4][5][6] Plaintiff alleges that the accused products infringe on claim 1 of the '720 patent. In order to assess Defendants' motions for summary judgment of noninfringement, the court must engage in a two-step infringement analysis. " The first step is determining the meaning and the scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (*en banc*), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim construction is correctly a matter of law for the court to decide. *Id.* When construing a claim, a court should look to the intrinsic evidence, *i.e.,* the patent itself, its claims, written description, and the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1582 (Fed.Cir.1996). Additionally, statements made during the reissue [reexamination] proceeding " are relevant prosecution history when interpreting claims." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1439 (Fed.Cir.1988). Prosecution history need not relate to the particular claim at issue in a case in order to be relevant, so long as the prosecution history in question relates to the same claim term as in the asserted claims. *See Alpex Computer Corp. v. Nintendo Co.,* 102 F.3d 1214, 1220 (Fed.Cir.1996).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### A. Claim Construction

[7][8] In *Hemphill I*, the court construed the terms " vaginal swab," " outer housing," and " core member," and the Federal Circuit affirmed these constructions. Defendants argue that under the doctrine of collateral estoppel, or issue preclusion, the meaning of these terms as construed by the court in *Hemphill I* must apply in the instant case as well. There are four factors that must be met for collateral estoppel to apply: (1) the issue was identical to one decided in an earlier action; (2) the issue was actually litigated in the earlier action; (3) resolution of the issue was essential to a final judgment on the merits; and (4) the plaintiff had a full and fair opportunity to litigate the issue in **\*416** the earlier action. *See Molinaro v. Fannon/Courier Corp., 745 F.2d 651, 655 (Fed.Cir.1984); A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 703-04 (Fed.Cir.1983).* The Federal Circuit has held that collateral estoppel applies to issues of claim construction. Specifically, " ' where a determination of the scope of the patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims.' " *Pfaff v. Wells Electronics, Inc., 5 F.3d 514, (Fed.Cir.1993), quoting Molinaro, 745 F.2d at 655.*

[9][10] Plaintiff's opposition appears to focus solely on the first required factor for collateral estoppel. Plaintiff argues that collateral estoppel does not apply to claim construction in this suit because the first suit pertained to alleged infringement of claim 2, while this suit concerns claim 1. However, the claim terms construed in *Hemphill I* appear in both claim 1 and claim 2. It is well-settled law that unless the patent provides otherwise, a claim term cannot be given a different meaning in various claims of the same patent. *See Georgia-Pacific Corp. v. United States Gypsum Co., 195 F.3d 1322, 1331 (Fed.Cir.1999); Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1579 (Fed.Cir.1995).* Plaintiff has not demonstrated that anything in the patent requires that terms be given a different construction in claim 1 than in claim 2. Thus, the issue in this suit, *i.e.,* the meaning of " vaginal swab," " outer housing," and " core member," is the same issue already decided in *Hemphill I*. Plaintiff's attempt to describe claim 1 as " structural" in order to distinguish it from claim 2 is unpersuasive, in part because claim 2 is also a structural claim (as opposed to a process or method claim).

Because the requirements for collateral estoppel have been met, the claim construction established in *Hemphill I* must be given collateral estoppel effect on claim construction in this case. Accordingly, Plaintiff is collaterally estopped from arguing, as she tries to do in her opposition motion, for a new construction of the claim terms " vaginal swab," " outer housing," and " core member."

In *Hemphill I* he court construed " vaginal swab" as " a small piece of absorbent material attached to the end of a stick or wire and used for cleansing or applying medicine," meant to be used within the vaginal canal. [FN4] *See Hemphill I, 134 F.Supp.2d at 726-27, citing American Heritage Dictionary* 1810 (3d ed.1992); *see also Dorland's Medical Dictionary* 1617 (28th ed.1994). The court construed the term " outer housing" as a device that serves as a handle structure for the use of the swab and is not designed to be removed and thrown away. *Id.* at 727. " Core member" was construed by the court as " a fairly rigid core member with an annular band or ring at its base that can fit into the band or ring of the outer housing." *Id.* These are the definitions against which the accused products must be compared to determine whether they infringe on claim 1 of the '720 patent.

> FN4. The court expressly rejected the argument that Plaintiff again tries to make in this case that " vaginal" refers to the outer housing as the cover or sheath. 134 F.Supp.2d at 726.

### B. Comparison to Accused Products

#### 1. Literal Infringement

[11] A claim of literal infringement requires proof that the accused devices meet every limitation of the properly construed claims. *See Gentry Gallery, Inc. v. Berkline Corp., 134 F.3d 1473, 1476 (Fed.Cir.1998).* " If even one limitation is missing or not met as claimed, there is no literal infringement." **\*417***Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed.Cir.1998).* Defendants argue that because their products lack several limitations of claim 1, there can be no literal infringement as a matter of law.

#### a. KOTEX, POISE and ALWAYS sanitary napkins

[12] Like the products in *Hemphill I,* the accused

sanitary napkins in the current case do not function as " vaginal swabs" as required by the claims in the '720 patent. Plaintiff herself has stated that her vaginal swab does not resemble, behave, or function like a sanitary napkin. *See* Paper no. 22, Ex. D1 at PTO 00440. As discussed earlier, the sanitary napkins are intended to cover a portion of an undergarment to passively collect fluid. They do not consist of a piece of absorbent material attached to the end of a stick or wire and are not designed for internal vaginal use. Indeed, they are neither the size nor the shape that would allow for internal use.

Moreover, the structure of Plaintiff's invention differs greatly from the accused sanitary napkins. The sanitary napkins do not have an " outer housing" structure that is designed to be utilized as a handle for the use of a swab, as required by the '720 claims. The accused sanitary napkins merely have a plastic outer wrapping that is thrown away once the napkin is utilized. At most, the discarded wrapper covers the used and soon-to-be discarded napkin. The plastic wrapping is in no way equivalent to the handle function of the " outer housing" in Plaintiff's invention.

Additionally, the accused sanitary napkins lack a " fairly rigid" core member with an annular band or ring at its base that can fit into the band or ring of the outer housing. While the sanitary napkins do have an absorbent core, the core is soft and pliable, not " fairly rigid," and they do not have an annular band or ring that can fit into the band or ring of an outer housing. Given the absence of the foregoing elements from the accused sanitary napkins, Plaintiff has failed to establish that the accused products literally infringe upon her '720 patent.

### b. KOTEX SECURITY and TAMPAX tampons

[13] Similarly, Kimberly-Clark's KOTEX SECURITY tampons and Procter & Gamble's TAMPAX tampons do not literally infringe upon the '720 patent. Although they are intended for internal vaginal use, the accused tampons are not " swabs." They do not consist of a small piece of absorbent material attached to the end of a stick or wire; the string attached to the tampons only allows the user to remove the tampon, not to manipulate it. In addition, the tampons are designed to absorb menses, not to clean or apply medicine.

Furthermore, the accused tampons do not have an "

outer housing" structure that is designed to be used as a handle for the swab, as required by the '720 claims. The tampon applicator does not transform into a handle after the tampon is inserted, but is instead designed to be completely removed and thrown away. Finally, the accused tampons lack a core member with an annular band or ring at the base that can fit into the band or ring of an outer housing. Because the accused tampons lack several elements, they, too, do not literally infringe on claim 1 of the '720 patent.

### 2. Doctrine of Equivalents

[14][15][16] Under the doctrine of equivalents, a product which does not literally infringe upon the express terms of a patent may nonetheless infringe if there is " equivalence" between the elements of the accused products and the claimed elements of the patent. *Zelinski v. Brunswick Corp.,* 185 F.3d 1311, 1316 (Fed.Cir.1999), *citing* *418*Warner-Jenkinson, Inc. v. Hilton Davis Chem. Co.* 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Infringement occurs under the doctrine of equivalents if the difference between the particular element and the claim limitation are " insubstantial." *Id.* A test to determine " insubstantiality" is whether " the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *Id.,* at 1316-17, *citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

Plaintiff has not demonstrated that the differences between the elements in claims 1 or 2 of the '720 patent and the accused products are insubstantial. Each of the accused products lacks numerous structural limitations of the '720 patent and serves a different function. As mentioned earlier, Plaintiff herself noted during the prosecution and reexamination proceedings that her invention, a vaginal swab, does not look, behave or function like a sanitary napkin. *See, e.g.,* Paper no. 22, Ex. D1 at PTO 00440. Accordingly, the court finds that no reasonable jury could find there to be equivalence between the accused products and Plaintiff's invention.

### IV. Conclusion

Because there is no genuine issue of material fact and

258 F.Supp.2d 410

258 F.Supp.2d 410

**(Cite as: 258 F.Supp.2d 410)**

Defendants are entitled to judgment as a matter of law, the court shall grant Defendants' motions for summary judgment of noninfringement. Defendants' counterclaims for declaratory judgments of noninfringement will be dismissed without prejudice.

D.Md.,2003.
Hemphill v. Procter & Gamble Co.
258 F.Supp.2d 410

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT
# 4

LAW OFFICES

# KRAMON & GRAHAM, P.A.

ONE SOUTH STREET
SUITE 2600
BALTIMORE, MARYLAND 21202-3201
TELEPHONE: (410) 752-6030
FACSIMILE: (410) 539-1269

www.kramonandgraham.com

JAMES P. ULWICK
DIRECT DIAL
(410) 347-7426

ALSO ADMITTED IN NJ AND DC

E-MAIL
julwick@kg-law.com
DIRECT FACSIMILE
(410) 361-8206

September 5, 2007

VIA CERTIFIED FIRST-CLASS MAIL
RETURN RECEIPT REQUESTED
Allegra D. Hemphill
4902 3rd Street N.W.
Washington, D.C. 20011

> Re:    In the United States Court for the District of Columbia
> Civil Action No.: 07-CV-01236
> Hemphill v. Kimberly Clark Corporation, et al.

Dear Ms. Hemphill:

I represent Kimberly-Clark Corporation ("K-C") in the above-captioned litigation which you filed on July 10, 2007. Dave Maiorana of the law firm Jones Day represents The Procter & Gamble Co. ("P&G") in that lawsuit. The purpose of this letter is to request that you withdraw the Complaint and dismiss the action.

As you know, you previously sued K-C and P&G in the United States District Court for the District of Maryland, making allegations identical to those contained in the Complaint you filed in this matter. Your Maryland complaint was dismissed conclusively as having no merit. Nonetheless, you asked the Court of Appeals to review that decision, and they upheld the dismissal. This case is over.

The law does not permit you to continue re-litigating your claims by switching forums to the District of Columbia. You have already had a full and fair adjudication of your claims against K-C and P&G. You are now engaging in impermissible forum shopping. We therefore ask that you withdraw the Complaint and dismiss the action.

Enclosed is a copy of Defendants' Motion for Rule 11 Sanctions, which I hereby serve upon you. If you do not withdraw your Complaint immediately, we will file a motion to dismiss your action, along with the enclosed motion for sanctions. In the motion for sanctions, we ask the Court to order you to pay us the fees and costs we incur

Allegra D. Hemphill
September 5, 2007
Page 2

in dealing with your new filing.  We have come to the regrettable conclusion that such a sanction is necessary to prevent your continued abuse of the judicial system.

Feel free to contact me if you have any questions.  Further, we suggest that you seek the advice of counsel in this matter.

Very truly yours,

James P. Ulwick

JPU:sms
Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALLEGRA D. HEMPHILL | * | |
| Plaintiff, | * | Civil Action No. 07-CV-01236 |
| v. | * | |
| KIMBERLY-CLARK CORPORATION, | * | |
| and | * | Judge Rosemary M. Collyer |
| THE PROCTER & GAMBLE COMPANY, | * | |
| Defendants. | * | |

*    *    *    *    *    *    *    *    *    *

## DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

Defendants Kimberly-Clark Corporation and The Procter & Gamble Company, by and through their attorneys, hereby move for sanctions against plaintiff Allegra D. Hemphill, pursuant to Rule 11 of the Federal Rules of Civil Procedure. The grounds for this motion and the relief requested are set forth in the attached memorandum of law.

Dated: _____, 2007

Respectfully submitted,

DRAFT

_____

James P. Ulwick
Kramon & Graham, P.A.
One South Street
Suite 2600
Baltimore, Maryland 21202
Telephone: (410) 752-6030
Facsimile: (410) 539-1269

*Attorneys for Defendant*
*Kimberly-Clark Corporation*


_____

Blaney Harper
Jones Day
51 Louisiana Avenue
Washington, DC 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Attorneys for Defendant*
*The Procter & Gamble Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALLEGRA D. HEMPHILL | * | |
| Plaintiff, | * | Civil Action No. 07-CV-01236 |
| v. | * | |
| KIMBERLY-CLARK CORPORATION, | * | |
| and | * | Judge Rosemary M. Collyer |
| THE PROCTER & GAMBLE COMPANY, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

Defendants Kimberly-Clark Corporation ("KCC") and The Procter & Gamble Company ("P&G"), by their undersigned counsel, submit this memorandum of law in support of their Motion for Rule 11 Sanctions, and state as follows:

### INTRODUCTION

This is a motion for Rule 11 sanctions against plaintiff Allegra D. Hemphill ("Hemphill") for the filing the Complaint in this case. Rule 11 sanctions are warranted because Hemphill filed the Complaint for the improper purpose of harassing Defendants, causing them a needless increase in the cost of litigation, and because Plaintiff engaged in impermissible forum shopping even though the U.S. District Court for the District of Maryland dismissed substantively identical claims Hemphill brought against Defendants in an earlier lawsuit.

{03144/0/00312734.DOCv1}

FACTUAL BACKGROUND

DRAFT

This is the second substantively identical action filed by Hemphill against

Defendants, and at least the third meritless infringement suit brought by Hemphill, under

her U.S. Patent No. 4,557,720 (the "'720 Patent"), which is directed to a vaginal swab.

The first such suit, brought in the U.S. District Court for the District of Maryland,

culminated in summary judgment against Hemphill in 2001. *See Hemphill v. McNeil-*

*PPC, Inc.*, 134 F. Supp. 2d 719 (D. Md. 2001) (*Hemphill I*) (Exhibit A).  In that decision,

Judge Deborah K. Chasanow interpreted several terms of the '720 Patent and found no

facts supporting Hemphill's claims of infringement under Claim 2 of that patent. *Id.* at

729.  Specifically, Judge Chasanow provided a detailed analysis of the claim terms "core

member" and "outer housing." *Id.* at 727.  Judge Chasanow granted summary judgment

in favor of the defendants because Hemphill's vaginal swab patent bore little functional or

practical relationship to the allegedly infringing sanitary napkins. *Id.* at 728.  The Federal

Circuit affirmed.  Hemphill's petition for a rehearing was denied.  Her petition to the

United States Supreme Court was denied, as was her petition for a rehearing. *See*

*Hemphill v. McNeil-PPC, Inc.*, 25 Fed. Appx. 915 (Fed. Cir. 2001), *reh'g denied* Dec. 21,

2001, *cert. denied* 537 U.S. 820 (2002), and *petition for reh'g denied* 537 U.S. 1067

(2002) (Exhibits B through D).

On November 18, 2002, Hemphill filed in the United States District Court for the

District of Maryland (the "Maryland Complaint") her second complaint against

defendants KCC and P&G.  (*See* Exhibit E.)  The Maryland Complaint alleged that KCC

DRAFT

and P&G infringed the '720 Patent. *See* Maryland Complaint ¶ 12. With regard to KCC,

Hemphill claimed that KCC's feminine hygiene products KOTEX® and POISE®

infringed Claim 1 of the '720 Patent. *Id.* at ¶ 13. With regard to P&G, Hemphill claimed

that P&G's ALWAYS® products infringed Claim 1 of the '720 Patent. *Id.*

On April 15, 2003, Judge Chasanow granted summary judgment of non-

infringement in Defendants' favor. *See Hemphill v. Procter & Gamble Co.*, 258 F. Supp.

2d 410 (D. Md. 2003) *(Hemphill II)* (attached as Exhibit F). Relying on the collateral

estoppel effect of *Hemphill I*, Judge Chasanow held that, in both Claims 1 and 2 of the

'720 Patent, the terms "vaginal swab," "outer housing," and "core member" must be

interpreted in *Hemphill II* as they were interpreted in *Hemphill I*, and that Defendants'

accused products lack several of the claimed elements. *Id.* at 415-17. Thus, as a matter

of law, the accused products do not infringe the '720 patent, either literally or under the

doctrine of equivalents. *Id.* at 417-18.

Hemphill then filed a motion to alter or amend the findings of *Hemphill II*, but she

failed to present new evidence, failed to assert an intervening change in controlling law,

and failed to establish either an error or manifest injustice in Judge Chasanow's decision.

*Hemphill v. Procter & Gamble Co.*, No. CIV. A. DKC 2002-3736, slip op. at 2 (D. Md.

June 11, 2003) (attached as Exhibit G). Judge Chasanow denied Hemphill's motion,

noting that Hemphill was "attempting simply to reargue the merits of the case." *Id.* at 2.

The Federal Circuit affirmed on the same grounds. *Hemphill v. Procter & Gamble

Co.*, No. 03-1463, 85 Fed. Appx. 765 (Fed. Cir. Jan. 15, 2004), noting that Hemphill had

a "full and fair opportunity" to litigate the meaning of the claim terms of her patent in

*Hemphill I.* The court rejected Hemphill's attempts to reopen claim construction on the

ground that "the claim construction of [C]laim 2 in [*Hemphill I*] . . . is applicable in this

action." *Id.* at \*1-2. Hemphill again filed requests for rehearing, which were denied on

February 23, 2004 (attached as Exhibit H).

In June 2005, Hemphill filed a motion for the entry of a "Final Judgment." Judge

Chasanow observed that Hemphill seemed to be under the impression that

> this court has not yet ruled on her claims alleging patent
> infringement . . .. Plaintiff is mistaken. This court's April 15,
> 2003, Order fully resolved Plaintiff's claims in favor of
> Defendants. Judgment was entered on behalf of defendants
> and against Plaintiff and the case was closed. Plaintiff's later
> motion to amend the court's judgment was denied. Plaintiff's
> claims have been fully adjudicated in this court. Moreover,
> Plaintiff's appeal has been heard and decided by the Federal
> Circuit, which affirmed this court's earlier ruling.
> Accordingly, there is nothing further for this court to
> determine with regard to Plaintiff's case.

*Hemphill v. Procter & Gamble Co.*, NO. CIV. A. DKC 2002-3736, slip op. at 2 (D. Md.

Feb. 13, 2006) (attached as Exhibit I).

Hemphill appealed this ruling as well. Having had no luck with the Federal

Circuit in her earlier appeals, she first sought review in the Fourth Circuit. The Fourth

Circuit, after initially accepting Hemphill's petition, properly refused to consider the case

and transferred it to the Federal Circuit. The Federal Circuit summarily affirmed Judge

Chasanow's ruling because Defendants' position was "so clearly correct as a matter of law

that no substantial question regarding the outcome of the appeal exists." *Hemphill v.*

DRAFT

*Procter & Gamble Co.*, No. 2006-1300, slip op. at 2 (Fed. Cir. May 1, 2006) (citations omitted) (attached as Exhibit J). Hemphill then wrote to the United States Supreme Court, apparently attempting to further appeal the rulings against her. Her petition for certiorari was denied. *Hemphill v. Procter & Gamble Co.*, 127 S.Ct. 675 (2006), and *petition for reh'g denied* 127 S.Ct. 1172 (2007) (attached as Exhibits K and L).

Undaunted by her failures to overturn the multiple rulings against her, Hemphill has now tried a new tactic: forum shopping in this Court. On July 10, 2007, Hemphill filed the Complaint in this matter (the "D.C. Complaint") and alleged the same claims against the same parties as *Hemphill II*. In both the Maryland Complaint and the D.C. Complaint, Hemphill alleged that the Defendants' ALWAYS®, KOTEX®, and POISE® products literally infringe her "vaginal swab" patent, including the "core member" and "outer housing" terms described in the '720 Patent. She sought the same relief in the D.C. Complaint that was denied in the Maryland Complaint (and in *Hemphill I*), including damages, equitable relief, punitive damages, profits, and royalties.

The allegations of the two claims are essentially indistinguishable. The only difference in the two complaints is that in Maryland she relied on Claim 1 of the '720 Patent, whereas here she relies on Claim 2. This difference provides no basis for the new lawsuit, because the claim elements that the Maryland court found to be missing in the Defendants' products – such as "vaginal swab," "outer housing," and "core member" – are present in both claims, and have the same meaning in both claims as a matter of law. *See* 258 F. Supp. 2d at 416-417. Given the non-infringement summary judgment rulings

DRAFT

of Judge Chasanow, both in *Hemphill I* and *Hemphill II*, and given Hemphill's numerous

attempts to litigate and relitigate all aspects of both claims in the District of Maryland, the

Federal Circuit, and the Supreme Court, Hemphill has had numerous opportunities to

litigate these matters to finality in several different courts. Hemphill's forum-shopping is

particularly blatant because she concedes in paragraph 12 of the D.C. Complaint that the

"core member" and "outer housing" terms described in the '720 Patent in this matter

"were previously adjudicated in United States District Court, for the District of Maryland

. . .." *See* D.C. Complaint ¶ 12.

## LEGAL STANDARDS

Rule 11 sanctions are available for bad faith litigation tactics. *See Reynolds v.*

*U.S. Capitol Police Board*, 357 F. Supp. 2d 19, 23 (D.D.C. 2004). Such tactics include

attempting to forum shop or otherwise relitigate issues already decided. *See, e.g.,*

*McLaughlin v. Bradlee*, 602 F. Supp. 1412, 1418 (D.D.C. 1985). In other words, "[i]t is

especially appropriate to apply sanctions in situations where the doctrines of *res judicata*

and collateral estoppel plainly preclude relitigation of the suit." *Id.* Indeed, this Court

employs the rule that

> To bring an action in this district in the hope of obtaining a
> more favorable rule of law than was obtained in the district
> where plaintiff first elected to sue is forum shopping with a
> vengeance.

*Brinco Mining Ltd. v. Federal Ins. Co.*, 552 F. Supp. 1233, 1242 (D.D.C. 1982) (internal

citations and quotations omitted). The fact that a plaintiff proceeds *pro se* is no exception

to this rule. *See Sparrow v. Reynolds*, 646 F. Supp. 834, 839 (D.D.C. 1985) (sanctioning

a *pro se* plaintiff for filing numerous complaints on facts litigated and lost at a full trial on the merits).

The objective test for sanctions requires the court to examine "whether a reasonable inquiry would have revealed there was no basis in law or fact for the asserted claim." *Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1275 (D.D.C. 1993). Once the court finds that a pleading violates the rule, "'Rule 11 *requires* sanctions of some sort be imposed.'" *Reynolds*, 357 F. Supp. 2d at 24 (emphasis in original).

The court has discretion to assess sanctions reflecting the facts of the case before it. *Id.* at 26. Monetary sanctions are "well-established" as an appropriate sanction, and the measure of monetary sanctions may be the full costs of defending the "frivolous" or "bad faith" action. *Id.* (collecting cases, citations omitted).

In particularly egregious cases, a court also has the discretion to fashion an injunctive litigation bar. Such a bar would require the plaintiff to seek leave of court and show cause as to why any future filing should be permitted. *Sparrow*, 646 F. Supp. at 840. In seeking that permission the plaintiff is required to "certify that he raises claims that he has never before raised and that no federal court has decided on the merits." *Id.*

In *Sparrow*, the court imposed such a bar on a *pro se* plaintiff who brought numerous claims against the U.S. Navy notwithstanding the fact that he failed to obtain judgment on identical facts at a full trial on the merits. Finding that the plaintiff flouted the court's clear and unambiguous rulings on numerous occasions, the court fashioned an order prohibiting the plaintiff from filing any additional suits arising out of the same facts

DRAFT

against the same parties without first receiving leave of the court. *Id.*; *see also Morning Star Baptist Church v. James City County Police*, 480 F. Supp. 2d 853, 861 (E.D. Va. 2007) (imposing a pre-litigation injunction against a *pro se* plaintiff for filing duplicative suits intended to harass an already-burdened opponent and court).

## ARGUMENT

Hemphill has engaged in sanctionable conduct. Given prior litigation of her claims in Maryland, Hemphill's conduct amounts to "forum shopping with a vengeance." *Brinco*, 552 F. Supp. at 1242. In filing in this Court a complaint against the same parties, on the same facts litigated – and adjudicated – in Maryland, she is attempting to skirt the rulings of Judge Chasanow and the Federal Circuit. Sanctions are particularly appropriate where, as here, *res judicata* "plainly preclude[s] relitigation of the suit." *McLaughlin*, 602 F. Supp. at 1418.

Hemphill must concede that the D.C. Complaint is foreclosed by *res judicata* because these issues have already been litigated at least once (in *Hemphill II*), if not twice (in *Hemphill I*). She knows she sued the same two companies. Her complaint alleges infringement of the same patent by the same products. She admits in paragraph 12 of the D.C. Complaint that these issues have already been litigated in Maryland. Hemphill must admit that a "reasonable inquiry" would have led her to realize the allegations of the D.C. Complaint had been considered and dismissed both by Judge Chasanow and the Federal Circuit. *See Washington Bancorporation*, 812 F. Supp. at 1275. Objectively speaking,

DRAFT

sanctions are required. *Id.*; *see also Reynolds*, 357 F. Supp. 2d at 24 (noting that sanctions are required for any violation of Rule 11).

After Hemphill filed the D.C. Complaint, Defendants requested that she dismiss it. Defendants noted that, given Judge Chasanow's previous rulings, and Hemphill's failed appeals, she appeared to be engaging in forum shopping. Defendants advised Hemphill that if she did not voluntarily dismiss the D.C. Complaint, they would move to dismiss the case and seek Rule 11 sanctions. *See* Exhibit M. Hemphill ignored Defendants' letter, forcing them to file a Motion to Dismiss.

*Pro se* plaintiff or not, Hemphill has committed sanctionable conduct by filing the D.C. Complaint. Defendants therefore request that a monetary sanction be assessed against Hemphill in the form of an award of Defendants' attorneys' fees and costs in defending and dismissing the groundless D.C. Complaint.

Defendants also urge this Court to impose on Hemphill injunctive measures requiring her to seek leave of court before filing any other complaint claiming infringement of the '720 Patent against them. As is clear from her willful indifference to federal decisions dismissing her claims, Hemphill does not respect the prior judgments entered against her. The only way to avoid further taxing Defendants and this Court with harassing, vexatious, and duplicative litigation is to preclude Hemphill from commencing such actions. *See Sparrow*, 676 F. Supp. at 840.

This Court should not indulge Hemphill's blatant forum-shopping. Accordingly, Defendants request that the Court enjoin Hemphill from filing any further litigation

DRAFT

against Defendants related to the '720 Patent without first applying to the Court for leave

to file suit and certifying that any such claim is not based on facts already adjudicated in

previous cases.

## CONCLUSION

For the foregoing reasons, Defendants request a Rule 11 order for sanctions

against Hemphill in the form of (1) a monetary award of Defendants' costs and attorneys'

fees in defending this suit; and (2) injunctive relief as a litigation bar.

DRAFT

Dated: _____, 2007                    Respectfully submitted,


                                            _____
                                            James P. Ulwick
                                            Kramon & Graham, P.A.
                                            One South Street
                                            Suite 2600
                                            Baltimore, Maryland 21202
                                            Telephone:  (410) 752-6030
                                            Facsimile:  (410) 539-1269

                                            *Attorneys for Defendant*
                                            *Kimberly-Clark Corporation*



                                            _____
                                            Blaney Harper
                                            Jones Day
                                            51 Louisiana Avenue
                                            Washington, DC 20001-2113

                                            Telephone:  (202) 879-3939
                                            Facsimile:  (202) 626-1700

                                            *Attorneys for Defendant*
                                            *The Procter & Gamble Company*

DRAFT

## CERTIFICATE OF SERVICE

I hereby certify that on this __th day of _____, 2007, copies of Defendants'

Motion for Rule 11 Sanctions and supporting memorandum of law were served by first-

class U.S. Mail, postage prepaid, on:

Allegra D. Hemphill
6217 Charnwood Drive
Rockville, Maryland 20852

*Pro Se Plaintiff*

_____

James P. Ulwick
Kramon & Graham, P.A.
One South Street
Suite 2600
Baltimore, Maryland 21202
Telephone:  (410) 752-6030
Facsimile:  (410) 539-1269

*Attorneys for Defendant*
*Kimberly-Clark Corporation*

# EXHIBIT
# 5

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ALLEGRA D. HEMPHILL, *pro se*,     )
                       )
        Plaintiff,      )    Civil Action No. 1:07CV1236
                       )
     v.           )    Judge Rosemary M. Collyer
                       )
KIMBERLY-CLARK CORPORATION, and   )
THE PROCTER & GAMBLE CO.,    )
                       )
        Defendants.    )

### AFFIDAVIT OF JAMES P. ULWICK

    I, James P. Ulwick, counsel for Defendant Kimberly-Clark Corporation ("KCC") in the above-captioned matter, hereby affirm under penalty of perjury that the facts set forth herein are true and correct upon personal knowledge:

    1.    I am over eighteen (18) years of age and competent to testify in a court of law.

    2.    I submit this Affidavit in support of Defendants' Motion for Rule 11 Sanctions and Request for Attorneys' Fees to Prevailing Party (the "Motion").

    3.    I, along with Christian M. Vainieri, Esquire, and other administrative staff of Kramon & Graham, P.A., performed all of the professional services that were reasonable and necessary to prepare KCC's defense to the Plaintiff's claims in this action.

    4.    I am a senior partner at Kramon & Graham, P.A. I have been licensed to practice law in the State of Maryland since 1977, am a member of the bar of this honorable Court and clerked for the Honorable Edward S. Northrop, Chief Judge of U.S. District Court for the District of Maryland, from 1977-1978. I am a seasoned trial attorney and have litigated hundreds of matters throughout Maryland and across the country. I am counsel to KCC and, in this capacity, am familiar with the matters contained herein.

5.    Mr. Vainieri is an associate at Kramon & Graham, P.A.  He has been licensed to practice law since 2001, and licensed to practice in the State of Maryland since 2007.  Mr. Vainieri is counsel to KCC and, in this capacity, has familiarity with the matters contained herein.

6.    The total amount of KCC's attorneys' fees in this matter is $18,373.00.

7.    Those fees, and the hourly rates for the individuals involved in Kramon & Graham, P.A.'s representation of KCC in this case, are fair and reasonable in view of the history and complexity of this case, and the number and type of repetitive, frivolous filings made by Plaintiff.

8.    We will make the billing statements underlying the work performed in defense of P&G in this action available to the Court for *in camera* review at the Court's request.

9.    On September 5, 2007, I sent to Plaintiff Allegra D. Hemphill a letter informing her that the complaint filed in this matter had no basis in law or fact, given the various rulings against her in prior litigation.  I attached to that letter a draft motion for Rule 11 sanctions and advised Hemphill that, if she did not withdraw her complaint, KCC would file the motion for sanctions.  A copy of that letter and the draft motion for sanctions is attached to the Motion as Exhibit 4.

### THIS ENDS MY AFFIDAVIT

I declare under penalty of perjury that the foregoing is true and correct.


Dated:  January 17, 2008                                 James P. Ulwick, Esquire

# EXHIBIT
# 6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ALLEGRA D. HEMPHILL, *pro se*, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:07CV1236 |
| | ) | |
| v. | ) | Judge Rosemary M. Collyer |
| | ) | |
| KIMBERLY-CLARK CORPORATION, and | ) | |
| THE PROCTER & GAMBLE CO., | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF DAVID M. MAIORANA**

I, David M. Maiorana, counsel for Defendant The Procter & Gamble Company ("P&G") in the above-captioned matter, hereby affirm under the penalties of perjury that the facts set forth herein are true and correct upon personal knowledge:

1.      I am over eighteen (18) years of age and competent to testify in a court of law.

2.      I submit this Affidavit in support of Defendants' Motion for Rule 11 Sanctions and Request for Attorneys' Fees to Prevailing Party.

3.      I, along with Joseph D. Pollack and other attorneys and administrative staff of Jones Day, performed all of the professional services that were reasonable and necessary to prepare P&G's defense to the Plaintiff's claims in this action.

4.      The work done by Jones Day in defending P&G in this action can be summarized as follows: drafting of the motion to dismiss the complaint and accompanying legal research, as well as working with co-defendant, Kimberly-Clark, regarding the Rule 11 sanctions motion and correspondence to Plaintiff regarding that motion.

5.    The total amount of P&G's attorneys' fees in this matter is $24,845.06.

6.    Those fees, and the hourly rates for the individuals involved in Jones Day's representation of P&G in this case, are fair and reasonable in view of the history and complexity of this case, and the number and type of repetitive, frivolous filings made by Plaintiff.

7.    We will make the billing statements underlying the work performed in defense of P&G in this action available to the Court for *in camera* review at the Court's request.

8.    I declare under penalty of perjury that the foregoing is true and correct.


Dated:  January 17, 2008                    _____
                                            David M. Maiorana, Esq.