RECEIVED

FEB - 1 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALLEGRA D. HEMPHILL, | * | |
| Plaintiff | * | |
| vs. | * | Civil Action No. 1:07cv1236 **RMC** |
| | * | |
| KIMBERLY- CLARK CORPORATION | * | |
| and | * | |
| | * | |
| PROCTER & GAMBLE COMPANY | * | |
| Defendant(s). | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Plaintiff's Federal Rules of Civil Procedure Rule 60(b) Motion.

For the reasons that follow, the Plaintiff files this motion pursuant to Fed. R. Civ. Pro., Rule 60(b) in the instant action. The Fed. R. Civ. Pro., Rule 60(b) is basis/ grounds for **reconsideration** for matters such as mistake, inadvertence, excusable neglect, newly discovered evidence or fraud. Fed. R. Civ. Pro. 60 (b) gives this Court power, for the reasons that follow:

In the memorandum opinion, this Court acknowledged the mandatory patent law in Title 35 U.S.C.§ 112 ¶2 and ¶6. This Court is encouraged to pay close attention to the details with respect to the United States Letters Patent 4,557,720 (the '720 patent) regarding Species # 4, Appl. No. 619,684. This motion is for reconsideration that asks this Court for relief.

For the sake of correctness, this Court may take judicial notice of public records from other proceedings'. See Document 15, Opinion at page 4. The prosecution history is in evidence. See Appendix in Document 9. Fed. R. Civ. Pro., Rule 60(b) provides as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgement, order or proceeding for the following reason:

1) mistake inadvertence or excusable neglect

2) newly discovered evidence

3) fraud, misrepresentation , or other misconduct of an adverse party

4) the judgement is void ...6) any other reason justifying relief from the operation of the judgement.

This rule does not limit the power of [this Court]  to entertain an independent action to relieve a party from a judgement, order or proceeding, or to set aside a judgement for fraud upon the court."

# TABLE OF CONTENTS

PAGE

## I. FACTUAL BACKGROUND

PROSECUTION HISTORY

PATENT APPLICATION 434,828...........................................................................1

PATENT APPLICATION 619,684...........................................................................4

## II.    A. RULE 12(b) 6...................................................................................................9

PROCEEDINGS..................................................................................................10

Hemphill v. McNeil-PPC, Inc.

Hemphill v. Procter & Gamble Company and Kimberly-Clark Corporation

Hemphill v. Kimberly-Clark Corporation and Procter & Gamble Company

CAUSE OF ACTION ..........................................................................................18

B. RES JUDICATA

NUCLEUS OF FACTS ........................................................................................19

ISSUES ARE NOT TO BE RE-LITIGATED ......................................................22

NO OPPORTUNITY BEFORE AN APPROPRIATE TRIBUNAL.....................23

## II. ANALYSIS

ACCUSED PRODUCTS .......................................................................................25

## IV. CONCLUSION..................................................................................................27

iii

## I. FACTUAL BACKGROUND

With respect to the <u>Background,</u> in Document 15, pg. 1-2 <u>and</u> the **Appendix** filed with Document 9, this Court may take judicial notice of public records from other proceedings'.

**On October 18, 1982, <u>Patent Application 434,828</u>** was filed in the United States Patent and Trademarks Office.[1] The patent application had **six claims**.

There were **four <u>distinct</u> species** which represents the 'nucleus of facts': [2]

> "This application [434,828] contains claims directed to the following patentably **distinct species** of the claimed invention: Figs. 1-2a; Fig. 3-4a; Fig. 5-6; Fig. 8, 9, respectively. Species # 1 is Figs. 1-2a; Species # 2 is Fig. 3-4a; Species # 3 Fig. 5-6; Species# 4 is Fig. 8, 9.
>> See App. 151A at ¶1 or see PTO Paper #4, pg 2 ¶1
>> See Patent Application 434,828 in PTO Paper No. 4, pages 1-3 or see Appendix at 150A-152A

> 'Applicant is required under 35 U.S.C. 121 **to elect a single disclosed species** for prosecution on the merits to which the claims shall be restricted if no generic claim..." See App. 151A , ¶2 or see PTO Paper #4, pg. 2 ¶2
> "Applicant is advised that a response to **this requirement must include an identification of the species that is elected** ...and a **listing of all claims readable thereon...**" See App, 151A, ¶3 or see PTO Paper #4, pg. 2 ¶3.

> Species #1 was readable on Figs. 1-2a. It was rejected by the PTO *citing* Kenner and Gelardin. In other words, the PTO rejected a cover in Kenner and rejected rotatable moving means in Gelardin. The PTO cited Alverez for the "[o]bvious selection of one well know absorbent means for another'.

---

[1] The applicant is Allegra D. Hemphill. Cushman, Darby & Cushman , 1801 K. Street NW Washington, DC. wrote the claims and filed the patent application 434,828 on behalf of Ms. Hemphill on October 18, 1982. All legal fees and maintenance fees were paid in a timely manner.

[2] It is well understood that **distinct species** means <u>not</u> being each and every one the same; **they are <u>not</u> the same**.

1

## PRIOR ART PATENTS CITED  in Patent Application 434, 828

GELARDIN **cited in Species # 1, (434,828)**

The Gelardin structure is **not relevant** to Ms. Hemphill's *invention in Species # 4.*[3]

In Hemphill v. McNeil-PPC, 134 F. Supp. 2d. 719 (D.Md. 2001), the court is focused on Species
# 1;  pertinent information was omitted or overlooked and therefore, the district court did not
obtain a thorough understanding.  The statement actually reads:

> [t]he Hemphill  device, after removing the outer housing serves as a handle structure, and
> still serves as a function for the device, unlike Gelardin that states that the cover is
> completely removed. ***Gelardin has a rotatable base by means of twisting a knob by the
> way of a travel carrier in the inner sleeve to advance and retract.*** Gelardin has an inner
> and outer sleeve that serve to advance and retract carrier. See 235A.

The  remarks above are  directed to another or different claim # 3 and to another or different

species in  the  patent application 434, 828. The PTO makes it clear that the structure the district

court judge found is not a cover but rather a rotatable moving means:

> Claims 1 and 3 stand rejected under 35 U.S.C. 103 as being unpatentable over
> Kenner in view of Gelardin.   It is considered obvious and well within the skill of
> the art to provide the device of Kenner with a removable

The structure  the PTO cited in Gelardin is for raising and lowering in a manner by means of

twisting and rotating a base member with an inner sleeves that effect rotations of sleeves by way

of a travel carrier. See 215A. Gelardin is directed to species # 1 and it is not relevant in this

litigation.  Moreover,  In the remarks, Hemphill is not distinguishing  the "cover" in her

---

[3] See PTO Paper #7 and PTO Paper # 10 :   "Claim 1 - 6 are pending in the application."
"Of the above, **claim 4 - 6 are withdrawn from consideration**" .at *App.* **207A and 223A.**
Ms. Hemphill's invention in the '720 Patent were claims 5 and 6 during the patent prosecution and not relevant here
in this patent application. Claims 5 and 6 were drawn to a non-elected species and they were safeguarded to protect
them from  the Examiners action above.

invention from the "cover" in the patent awarded to Gelardin.  The cover in Gelardin was not cited by the PTO.

NOTE: The PTO did not cite Gelardin for either claim 5 or claim 6 in the patent application 619,684 (Species # 4) that are now claim 1 and claim 2 in the '720 Patent.

## ALVAREZ cited in Species #1, Patent Application 434,828

The PTO did not cite the "outer housing" of Alvarez.   Under 35 U.S.C. 132, the PTO objects to the sentence  Judge Chasanow points to:

> "[t]he Alvarez device does not allow for an elongated structure for the swabbing element
> to be introduced into the vaginal cavity nor does it provide a sufficient handle structure".

Under 35 U.S.C. 132,  the PTO objected to the *request  for* an amendment  filed May 14, 1984.

The PTO did not allow the  *request for* an amendment dated May 14, 1984 "because it introduces new matter into the specification".

> "35 U.S.C. 132 states that no amendment shall introduce new matter into the
> disclosure of the invention.  The added material is as follows:  additions to
> specification and proposed new drawing figures.  Applicant is required to cancel
> the new matter in the response to this Office Action."  See 224A  in  PTO Paper
> #10. Also, see  Paper #9 in the PTO is marked 'do not enter'.  213A–221A. [4]

---

[4] Official actions in the PTO  objected to  *new* material (elongated element to be introduced into the vaginal cavity) . Despite this fact, so as to enter the vaginal cavity,  the corporations and the district court  agreed to include *additional structure* (on a stick or on a wire ) found via dictionary definition  for the terms "swab" in the named vaginal swab,  and the US Court of Appeals for the Federal Circuit  affirmed. *See American Heritage Dictionary* 1810 (3d ed. **1992**); also see *Dorland's Medical Dictionary* 1617 (28th ed. **1994**). However, internal use and/or external use is not relevant.  See "The way the consumer makes use of a vaginal swab is entirely up to them. *App.* 297A, 307A..

## PROSECUTION HISTORY IN <u>PATENT APPLICATION 619, 684</u> [5]

**On June 11, 1984,** Ms. Hemphill filed her **Patent Application  619,684 and elected Species #4,** Figures  8 and 9. The  **readable claims are 5 and 6.** See App. 228A , ¶ 2 [6]

> The PTO says: "The papers filed with the request for File Wrapper Continuation received on June 11, 1984 and the election of **species # 4, Figures 8 and 9 is noted**. The **claims readable on the elected species are 5 and 6.**" See App. 240A

In the patent application 619, 684 the applicant, Ms Hemphill clarified *the way of absorbing* through the prior art of Alvarez Patent 4,177,811 that has only <u>one</u> fiber. Characteristic of an adsorbent member is when <u>two</u> fibers working together, helps improve absorbing:

> "However, it is important to employ a highly absorbent material and accordingly, any such materials could be used as the absorbent material" at  Col. 3, ll 65-68 in the '720 Patent.  The adsorbency characteristic changes the way a vaginal swab behaves and functions which is to dry and/or absorb.  "[T]he patentee did not conceal or fail to disclose this correlation, but instead featured it as the centerpiece of the invention in <u>Metabolite Lab., Inc. v. Laboratory Corp</u>. 370 F3d.1354 (Fed. Cir. 2004) 1367. [7]  It is clear, the patentee Hemphill <u>did</u> not narrow  her claims and she did <u>not</u>  limit  the scope.

---

[5] The district court *knew* the correct patent application number 619,684 and date June 11, 1984. But, the corporate defendants misdirected her attention to the wrong patent application 434,828 and wrong species # 1. See *Hemphill v. McNeil-PPC* 134 F. Supp. 2d. 719, 725 -29 (D. Md. 2001) *at  I. Background* :
"Ms. Hemphill filed her application for the '720 patent with the Patent and Trademarks Office ("PTO") on June 11, 1984, and her patent was subsequently issued on December 10, 1985."

[6] **In Patent Application 619,684,** Ms. Hemphill  elected species #4 which claimed an adsorbent member in claim 5 that is now claim 1 in the '720 Patent. Ms. Hemphill had to  clarify the adsorbency characteristic in the elected Species #4 Claim 5 <u>and</u> thus, Hemphill overcomes the prior art Alvarez. See PTO Paper # 7 or see App. 209A

[7] A vaginal swab is designed to dry or absorb, when one *observes*  menses, perspiration, lubrication etc. building up to the point... to keep one cleaner, fresh and dry-- which is unlike a sanitary napkin. Col. 3, ll. 5-9.

**On December 10, 1985, the claims 5 and 6 in patent application 619, 684 became claims 1 and 2 in the United States Letters Patent 4,557,720**. See the front page on "the Hemphill '720 Patent" *App*. 107A -114A.:

> Application Number   06/619,684
> Filing Date          June 11, 1984
> Patent Number        4,557,720
> Issue Date           December 10, 1985

**In 1998**, Johnson & Johnson insisted Ms. Hemphill file for two (2) reexamination proceedings in the United States Patent and Trademark Office regarding their prior art patents of Rosa McNair and Srininvasan.[8]

The **prior art Rosa McNair patent** 4,285,343 **was not a reexamination**. In *Hemphill v. McNeil-PPC, Inc*, the district court judge Chasanow is not reading the patent documents for herself to know that the statement regarding this prior art actually reads:

> "[Rosa] McNair was structurally more equivalent to Alvarez and is absorbing like Alvarez. Hemphill was found patentable over Alvarez." See 278A.(last paragraph.)
> The prior art of both Alvarez and Rosa McNair have **one** fiber (13) and **the Hemphill adsorbency characteristic (104) is two fibers working together as one helps improve absorbing**.

On April 3, 1998, the PTO agreed the prior art of Rosa McNair Patent was not relevant. The "statements" the district court judge Chasanow cited against the claims in the Hemphill '720 Patent were irrelevant. Both Hemphill and the PTO recognized immediately that prior art Rosa McNair Patent is like the prior art Alvarez patent, offering nothing new. The PTO reimbursed Hemphill for the filing fee and decided:

> "no substantial new question of patentability is raised by the request for reexamination and prior art cited therein" "Rosa McNair is neither relevant

---

[8]Ms. Hemphill obtained her infringement analysis from Parker & DeStefanoe, 300 Preston Ave. Suite 300 Charlottesville, Virginia before filing in the PTO.

under 35 U.S.C. § 102 and not relevant under 35 U.S.C. § 103." 291A.
"Accordingly since the newly submitted prior art patent to Rosa McNair presents
no substantial new question of patentability, the request for reexamination is
DENIED. 291A -292A.

In agreement with the PTO, Ms. Hemphill immediately notified Johnson & Johnson of the

Examiner's official statement.

**REEXAMINATION** in Patent Application 619, 684

**Reexamination of the Hemphill '720 Patent versus prior art Srininvasanet al, Patent
3,973,567 on** May 20, 1998.  See prior art structure already in the Hemphill '720 Patent. [9] [10]

The PTO granted **one and only one reexamination** under 37 CFR 1.137:

"because the provisions apply only to "an applicant" and not to parties (Johnson &
Johnson) in a reexamination proceeding. Additionally,  35 U.S.C. 305 requires
that the reexamination proceedings "will be conducted with special dispatch".
The Examiner states:
"It is agreed that the reference to Srininvasan et al raises a substantial new
question of patentability with respect to claim 2. **Srininvasan has structure that**

---

[9] See an <u>outer housing</u> in prior art Bower 4,159,718 patent (two sheets of a thin plastic material...paper tubular section) at  Col. 1, ll. 29-31, ("..rectangular sheets .."") at Col. 1, ll. 57-58.  App. 197A.

See a <u>cover</u> in prior art Johansson 4,165,942 patent: ("protective cover which can be opened up at one end ...and folded back to expose..") in Col. 1, ll. 48-55. App.  201A.

See a <u>container</u> in prior art Laker 4,175,439 patent: ("...flat flexible plastic pouch...open at one end which permits closing and sealing) in Col. 2, ll. 6-7 (...pulling the sides apart to open the container" in Col. 2, ll. 22 App. 204A.

See a <u>sheath </u>in prior art Schuster 4,157,709: "comprises an outer sheath, an intermediate tube slidable there within..."). Col. 2, ll. 60-66.  App. 190A.

[10]The prosecution history describes **a core member** in prior art Bower 4,159,718  ("..rectangular sheets ..") at Col. 1, ll. 57-58, App. 197A,  as well as, prior art Fielding 3,731,682 ("string or cord") in Col. 4, ll.35-40, App. 169A

See Reexamination **proves a core member** as flexible sheet via prior art '567: ("...may comprise a fluid impermeable sheet material such as polyethylene or polypropylene cellophane or other similar films"). Col. 4, ll.5-12. App. 331. Reexamination <u>confirmed</u> claim 1 and claim 2 . App. 306A.

> may read on claim 2 such as a <u>core member</u> surrounded by a layer of porous
> material, an outer housing, and housing means with 2 positions (one position that
> protects the core member and another position that exposes the core member for
> use)". 305A - 306A.

The Maryland district court judge was intentionally misguided and deliberately misinformed by

corporate defendants. The '720 Patent is <u>not</u> a "reissued" patent. In fact, the "reissue"

process is designed to correct drafting mistakes or the like. *Warner-Jenkinson Co. v. Hilton*

*Davis Chemical Co.* 520 US 17 (1997) 25. There were no amendments because there were no

mistakes and there were no changes made to the '720 Patent. The factual findings and results by

the PTO show the prior art Srininvasan et al, was a traditional sanitary napkin.

The sanitary napkin of Srininvasan et al was <u>not</u> the structural equivalent of Hemphill's

claim 2 (Species # 4) because Srininvasan lacks structure as the housing means (which is the

band 106 in figure 9). [11] 309A - 311A. The PTO mailed the **Reexamination Certificate** on

January 26, 1999, for the following **reasons**:

> 1. Claim 1 of the patent to Hemphill (4557720) is considered patentable over the
> patent to Srininvasan, et al. (3973567) because Srininvasan simply does not
> disclose the claimed structure, such as an open end opposite a closed end, an
> annular band, and frangible seams.
>
> 2. Claim 2 of the patent to Hemphill (4557720) is considered patentable over the
> patent to Srininvasan, et al. (3973567) because Srininvasan does not disclose the
> housing means of Hemphill and does not disclose a structure that could be
> considered equivalent to housing means of Hemphill. 310A.
> See Re-examination Certificate. 359A - 360A.

---

[11] In claim 2, the housing means is band 106. It is the handle structure in claim 2. It may also extend east
to west <u>or</u> north to south

A **Re-examination** (emphasis added) will ensure that whatever happens during a reexamination proceeding, when it is concluded the Commissioner will issue a certificate setting forth the results of the proceeding and the content of the patent. App., *infra*, 359A-360A. The findings in the United States Patent and Trademark Office concluded:

> The prior art of Srininvasan et al. US Patent 3,973,5567 ("the '567 patent") was *not* equivalent to the Hemphill '720 patent. App. *infra* , 101A-104A. Claims 1 and 2 were confirmed
> There were no changes in the specification. There were no changes in the drawings. There were no changes in claim 1 and no changes in claim 2. App. *infra*, 103A. The patent is not a "reissue" patent.
> See : "NO AMENDMENTS HAVE BEEN MADE TO THE PATENT" at 360A.

**On May 20 1996** the PTO decided the Hemphill '720 Patent *prevails over* the prior art patent. See Reexamination Certificate, Complaint at Ex. B.   In agreement with the PTO, Ms. Hemphill promptly notified Johnson & Johnson about the factual findings in the PTO.  The Hemphill '720 Patent *prevails over* the '567 Patent.  The corporate defendants did not challenge nor disagree with any decisions by the PTO, not at anytime. The record in the PTO is undisputed.

8

## II. LEGAL STANDARD

### A. Fed. R. Civ. Pro. Rule 12(b)6

Rule 12 (b) 6 *is 'failure to state a claim upon which relief can be granted'* --

**which is _not true._** In the Complaint, Ms. Hemphill stated 'grounds' of entitlement for relief

regarding her United States Letters Patent, 4,557,720 (the '720 Patent). See <u>Complaint</u>

paragraph 12 and see page 5 -6, in Document 1.

The '720 Patent also proves her entitlement  for *what* the United States Patent and

Trademark Office (PTO)   <u>granted</u> in the Patent Application 619,684. As proof, see the front

page in the '720 Patent clearly showing this, in Document 1,  at Ex. A.,  pg. 1,

or <u>see</u> the '720 patent in Document 9 at APPENDIX   107A-114A. :


**[21] Appl. No.  619,684**     [22] Filed : June 11, 1984

[63] Continuation of Ser. No. 434,828 Oct.18, 1982, abandoned.


See the front page in the  <u>Reexamination Certificate</u> at Document 1, Ex. B, pg. 1 or see Appendix

in Document 9, *at App*. 359A.:

Reexamination Request:
    No 90/004.987, May 22, 1998
Reexamination Certificate for:

| | |
|---|---|
| Patent No: | 4,557,720 |
| Issued: | Dec. 19, 1985 |
| **Appl. No.** | **619,684** |
| Filed: | Jun 11, 1984 |

The front page on both, the '720 Patent <u>and</u> Reexamination Certificate, automatically

directs the Court to Appl. No. 619, 684 which is the Species # 4, with respect to the independent

9

claim(s) 1, and 2. Yet, this Court overlooked the cause of action even though the Complaint asserted the *meaning* in the independent **claim 2 and correctly directed this Court's attention to Species # 4.** See Complaint paragraph 12 and see page 5 - 6:

WHEREFORE, Ms. Hemphill requests judgement against defendants Kimberly-Clark and Procter & Gamble as follows:

(a) A holding that each defendant has infringed upon the Hemphill Patent and that the Hemphill Patent shall be enforced respecting each of the defendants:

(b) A holding that the defendants' vaginal swabs contain a core member that is fairly rigid having an annular base that can fit into an annular band of outer housing, as detailed in the Hemphill Patent, **Species #4;**

(c) A holding that the defendants vaginal swabs contain an outer housing which serves as a handle structure for the use of the swab and is not designed to be thrown away, as detailed in the Hemphill Patent, **Species #4;**

## PROCEEDINGS

W*e know* the PTO <u>allowed</u> Appl. No. 619,684 which is directed to Species #4. It is clear, that " judgement" or "final judgement on the merits" has <u>not</u> been determined with respect to the United States Letters Patent 4,557,720 in claim 1 and/or claim 2, Species #4 in (Appl. No. 619,684). As proof, see the proceedings in Hemphill v. McNeil-PPC, Inc; see Hemphill v. Procter & Gamble Company and Kimberly-Clark Corporation <u>and</u> see this case in Hemphilll v. Kimberly-Clark Corporation and Procter & Gamble Company, below:

10

*Hemphill v. McNeil-PPC, Inc.*


1. In the incipient case of *Hemphill v. McNeil-PPC, Inc* the cause of action was for literal

patent infringement in claim 2 (Appl. No. 619,684).    McNeil-PPC, Inc was permitted to

proceeded first, with a motion for summary judgement for "non-infringement". In an effort to

prove their case, McNeil-PPC, Inc. misdirected the proceedings to the **wrong** Species # 1, in the

**wrong** Ser. No. 434, 828.    The attention of the previous district court judge was diverted

**from** Species # 4 in Appl. No. 619, 684,  **to**  the Species # 1 in Ser, No. 434,828.

As proof,  compare the above  Factual Background  with  *Hemphill v. McNeil -PPC, Inc.* 134 F.

Supp. 2d. 719, 725 -29 (D. Md. 2001) at  Claim Construction:


 **See** " **Vaginal Swab**" in  *Hemphill v. McNeil -PPC, Inc.* 134 F. Supp. 2d. 719 :
The district court writes:

> "From the prosecution history, Plaintiff also distinguished her invention on this particular
> point by a statement that the invention Alvarez lacked "an elongated structure for the
> swabbing element to be introduced into the vaginal cavity." **–is directed to the wrong**
> **Species # 1 in the wrong Ser. No. 434,828.**
>  See Factual Background above regarding Alvarez in Ser. No.434,828. The district court
> is focused on  ALVAREZ cited in Species #1, Ser. No. 434, 828 which pertains to 'new
> material' that the PTO objected to. [12]  To  *enter* the vaginal cavity for internal use in
> Species # 1, the district court simply added a stick or wire via dictionary definitions,
> despite the objections of the PTO.

> However, in Species # 4, Appl. No. 619,684, "use" is not relevant .
> The '720 patent describes *many uses* for the vaginal **area,** and  Reexamination has

---

[12]  The  remarks the previous district court points to, are in Species # 1 (434,828) regarding Alvarez. They
were not directed to the Species # 4 (619,684) because Ms. Hemphill's **invention is in claims 5 and 6** that are now
claim 1 and 2 in the '720 patent which were safeguarded to protect them  from material directed to a non-elected
species, during prosecution phase of 434,828.  As proof, see the communication from the PTO, which writes:
     "Claim 1 -6 are pending in the application.
     "Of the above, claims 4-6 are withdrawn from consideration".*App.*  207A and 223A.

proven: "[t]he way the consumer makes use of a vaginal swab is entirely up to them".
See at App. 297, App. 302 and App.307A. "and statements made during reexamination
proceedings "are relevant prosecution history when interpreting claims." E.I. DuPont de
Nemours & Co. v. Phillips Petroleum Co., 849 F.2d. 1430, 1439 7USPQ2d 1129, 1136
(Fed. Cir. 1988), cert. denied, 488 U.S. 986 (1988). See Hemphill v. Procter & Gamble
No. 03-1463, 2004 WL 74620 (Fed. Cir. Jan 15, 2004) at Claim Construction
Discussion.
The Federal Circuit affirms *the additional* structure (stick or wire) via dictionary
definition, and by doing this, widens the scope.[13]


   **See Outer Housing and Housing Means in** *Hemphill v. McNeil -PPC, Inc.*:
The district court writes:
   "'the '720 Patent specification states that the outer housing is comprised of 'an external
   cover, an internal tubular member and rotatable base," Id., Col. 1 lines 19-22. 'During
   the prosecution process...to distinguish her invention from Gelardin's patent "
   **—is directed to the wrong Species #1, in the wrong Ser. No. 434,828.**
   The district court is focused on GELARDIN cited in Species #1, Ser No. 434,828 that
   pertains to a rotatable base.
   See Factual Background regarding the Gelardin Patent above.

   For simplification, the record in the PTO pays particular attention to "the details":
   Species # 1 has three components or portions in an outer housing. (Ser. No. 434,828).
   Species # 4 has two components or portions as outer housing. (Appl. No. 619,684) .
   In Species # 4, Appl. No. 619,684, there is no such structure as a rotatable base in
   claims 5 and 6, that are now Ms. Hemphill's invention in claim 1 and 2 in the '720
   patent
   The Federal Circuit did not affirm the structure as a rotatable base. [14]

---

   [13] The Federal Circuit affirms in *Hemphill v. McNeil PPC* No. 01-1391, 2001 WL 1504561 (Fed. Cir.
Nov. 27, 2001) at Claim Construction : " the district court relied on the following dictionary definitions to
determine the plain meaning of the term "swab"; American Heritage Dictionary, 1810 (3d ed. **1992**) and Dorland's
Medical Dictionary 1617 (28th ed. **1994**) (defining "swab" as "a wad of cotton or other absorbent material firmly
attached to the end of a wire or stick.. etc."). and thus, widens the scope. The additional structure for a (stick or
wire) is the **range of equivalents**. *Warner-Jenkinson, Inc. v, Hilton Davis Chem Co.* 520 U.S. 17, 21, (1997)).

   [14] The Federal Circuit affirmed the meaning "outer housing" in *Hemphill v. McNeil PPC* No. 01-1391,
2001 WL 1504561 (Fed. Cir. Nov. 27, 2001) at Claim Construction :
" district court construed the term "outer housing" to require an outer housing that "functions as a handle for the use

See 'at least one layer of porous material ' in *Hemphill v. McNeil -PPC, Inc.*:
The district court writes:

> "During the reexamination proceedings, Plaintiff emphasized that the absorbency of her invention ... be composed of adsorbent material" **–is inaccurate.**

The previous court did not read the patent documents for herself because the statement actually reads:  " The prior art  of both Alvarez and Rosa McNair have **one** fiber (13) and the Hemphill adsorbency characteristic (104) is **two fibers** working together as one helps improve absorbing. [15]

The Federal Circuit affirmed  absorbent  material in claim 2 via dictionary  definitions for the term "swab".

See  **Core Member**  in *Hemphill v. McNeil -PPC, Inc.* 134 F. Supp. 2d. 719 :
"Claim 2  requires a fairly rigid core member
with [an annular band or ring at its base that can fit into the band or ring of the outer housing]  **is** the housing means  fitting within an outer housing.
**This is in fact  Species # 4 (Appl. No. 619,684).** [16]
Consistent with the '720 Patent specification, this above "term" includes absorbent material, the core member, outer housing and housing means.
Clearly, it is reasonable to determine the scope by clarifying 'a fairly rigid core member' and identifying  "an annular base that is fitting within the annular band" as the housing means fitting within the outer housing in claim 2, Species # 4.

---

of the swab," and is "not designed to be removed and thrown away".  Hemphill, 134 F. Supp. 2d at 727.
For this Court's understanding:
In claim 2, this structure is the housing means  which reads to a second position.
In claim 1, this structure is the open end outer housing  which reads to the first position

[15]  To *clarify the way of absorbing*, the PTO cited the prior art  Alvarez US patent 4,177,81, having only **one** fiber.  The characteristic of an adsorbent member is when **two** fibers working together, helps improve absorbing.  See "[i]t is important to employ a highly absorbent material and accordingly, any such materials could be used as the absorbent material" at  Col. 3, ll 65-68 in the Hemphill '720 patent.

[16]The Federal Circuit affirms in *Hemphill v. McNeil PPC* No. 01-1391, 2001 WL 1504561 (Fed. Cir. Nov. 27, 2001) at Claim Construction :  "the district court then construed the term "core member" to require "a fairly rigid core member with an annular band or ring at its base that can fit into the band or ring of the outer housing."

With respect to the above claim term regarding  Species #4, (Appl. No. 619,684), this Court is asked to *clarify* a 'fairly rigid core member' and *identify* the fact that 'an annular base fitting within an annular band ' **is** the housing means fitting within  outer housing in claim 2.[17] The outer housing in claim 2 is the housing means that  "functions as a handle for the use of the swab," and is "not designed to be removed and thrown away".    **The request is reasonable and the Court's task is easy.**  Moreover, the PTO already <u>confirmed</u> relevant structure during Reexamination . [18] <u>See</u> the Plaintiff's Motion to Submit Exhibits in Document 12, at page 7(b).


With respect to all of the above terms that were directed to the wrong Species # 1 from Ser. No. 434,828,  it is obvious that it created ambiguity for the previous district court which explains why  she prejudged  "the accused products named in this case do not infringe claim 2 because they lacked several limitations of the claim" --Clearly, the district court was intentionally misdirected to the wrong species # 1 in the wrong patent application 434,828 and *these facts are enough to raise a right to relief above the "speculative" level.*  See Document 15, Opinion at page 3.

--------

[17] The '720 patent describes 'fairly rigid core member ' in  Claim 2, Species # 4
as core 102 (flexible material) at Col. 5, ll. 36-37
and absorbent material 104 at Col. 5, ll. 29-31
is secured to core 102 but does not cover up annular band 106 Col. 5, ll. 36-38
which is **extremely compact** Col. 3, ll. 16-18.
**solid** or hollow at Col. 5, ll. 34-35,
segmented or **one piece** unit at Col. 2, ll. 6-7
with an annular base 106  of core 102 at Col. 5, ll.32-33, **is** housing means in claim 2,
fitting within an annular band Col. 5, ll. 44-45.
"both portable and disposable and easily carriable and usable" at Col. 3, ll. 16-18.


[18] <u>Reexamination </u>is verifiable <u>proof</u> that  a core member and housing means in claim 2 can be made of the same flexible material in claim 2. App. 306A. See Reexamination confirms a <u>core member</u> as flexible sheet via prior art '567:  ("...may comprise a fluid impermeable sheet material such as polyethylene or polypropylene cellophane or other similar films"). Col. 4, ll.5-12. App. 331. Reexamination <u>confirmed</u> claim 1 and claim 2 . App. 360A.

**Hemphill v. Procter & Gamble Company et al.((Hemphill II)**

The cause of action was for patent infringement, in the independent **claim 1,**

**Species # 4.**[19]   Seeking to capitalize on the previous district court's mistakes in *Hemphill v.*

*McNeil-PPC, Inc*, these defendants, Procter & Gamble Company Co and Kimberly-Clark

Corporation , knowingly filed <u>two</u> separate summary judgement motions for "non-

infringement" to also *deflect* the district court's attention in claim 1 *away from* Species #4

(Appl. No. 619, 684) and *over to* Species # 1 (Ser. No. 434, 828.) *via collateral estoppel.*

Knowingly or unknowingly, the district court granted the collateral *estoppel* citing

> "It is well-settled law that unless the patent provides otherwise, a claim term cannot be
> given a ***different meaning*** in various claims of the same patent." *Georgia-Pacific Corp.*
> *v. United States Gypsum Co.,* 195 F.3d. 1322, 1331 (Fed. Cir. 1999). See *Hemphill v.*
> *Procter & Gamble Co.* 258 F. Supp. 2d. 410, (D. Md. 2003) *at* <u>Claim Construction</u>.

This is important because the previous courts *meant to* follow a two-step infringement analysis.

"The first step is determining *the meaning* **[and scope]** of the patent claim asserted to be

infringed." *Markman v. Westview Instruments, Inc.*, 52 F3d. 967 (Fed. Cir. 1995) 979 (en banc),

aff'd. "Every infringement analysis requires **<u>two</u> <u>separate steps</u>**." See *Maxwell v. J. Baker Inc.*,

86 F3d. 1098 (Fed Cir. 1998). The two steps are <u>not</u> to be combined as if it were one step. Thus,

once the above first step is completed, "[t]he second step is **comparing** the properly construed

claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F3d. 967

(Fed. Cir. 1995) 979 (en banc), aff'd.  See *Hemphill vs. Procter & Gamble Co. and Kimberly*

*Clark Corporation* 258 F. Supp. 2d. 410 (D. Md. 2003)   <u>Standard of Review</u>.

---

[19]   As proof, the previous Complaint details this fact:
"The asserted claim is claim 1 in the '720 Patent. **Claim 1 is directed to species #4** in Col. 5, ll. 28
through Col. 6, ll. 58, figures 8 and 9 in the '720 Patent.
See Document 4, Ex. 1,page 4, ¶2.

**Yet, the first step *has not ever* been completed**.  Fulfilling the first step requires we also determine the *scope*  which is Species # 4 (Appl. No.  619,684).

### *Hemphill v. Kimberly-Clark Corporation and Procter & Gamble Company*

In this instant action, **we know** the cause of action is for patent infringement in the independent **claim  2, Species # 4.**  Here, the parties do not propose to "relitigate" *the meaning* in the claims, **but more to the point, <u>determine the scope</u>**.  The Complaint clearly directs this Court's attention  to Species # 4 which is the correct scope in  Appl. No. 619, 684.

Therefore, it is obvious that the clear intent of these corporate defendants is to divert <u>this Court's</u> attention *away from* <u>**species # 4,**</u> but this time, the diversionary tactic was based on a Fed. R. Civ. Pro Rule 12(b)6 (res judicata),  motion to dismiss,  that is misleading this Court. By acting on the motion first, rather than the Complaint, the opinion of this Court is 'flawed' primarily due to the  'subtlety'  in the misrepresentations the defendants made to this Court. As proof,  see Document 4.  The defendants  misrepresented the facts:

"[s]he is now  asserting the same patent" on pg. 1, Document 4.

However, Ms. Hemphill is asserting what the PTO  <u>allowed</u> in her '720 patent which is Species # 4  in  Appl. No 619, 684  because the defendants misled the previous district court to focus on what the PTO <u>rejected</u> in the '720 patent which is Species # 1, Ser. 434, 828. The defendants also misrepresented the cause of action :

[i]nfringement of claim 1 of the '720 patent" on pg. 2 and

"[t]his time... infringement of claim  2 of the '720 patent"on pg. 4,  as well as,

"[a]sserts that defendants have  infringed claim 2 of the '720 patent in this case, when she

16

had previously asserted infringement of claim 1 in the previous case"on pg. 7.
However, the facts show that Ms. Hemphill actually asserted **claim 2, Species # 4** in this case
<u>and</u>, **claim 1, Species # 4** in the previous case.  Case in point, Ms. Hemphill is correctly
asserting the claim <u>and</u> the correct scope (Species # 4) which is *in keeping with* the first step in
the infringement analysis that <u>requires</u>:

> "The first step is determining *the meaning* <u>and</u> scope of the patent claim asserted to be
> infringed." *Markman v. Westview Instruments, Inc.*, 52 F3d. 967 (Fed. Cir. 1995) 979 (en
> banc), aff'd. [20]

We already have *the meaning* for the claims  and there is no need to re-litigate that issue.
Now, fulfilling the first step requires we also determine the *scope*  which is Species # 4 (Appl.
No.  619,684) . It is for this reason, **we know**, the previous courts <u>could not</u> have determined
whether   "claim 1 reads on the accused P&G and K-C products" pg. 10 in Document 4.
To date, only *the meaning* has been determined and now this Court is required to determine the
scope.

Determining the scope <u>is</u> synonymous with applying the mandatory patent law Title 35
U.S.C. §112,¶6.  Title 35 U.S.C. §112, ¶6 requires the court to **look** and **see** "*corresponding
structures and the equivalents thereof*" in the correct Species # 4,  Appl. No. 619,684]. **It is a
mandate for this Court to obey**. This explains why these corporate defendants,  deliberately
and intentionally, tried to mislead this Court away from Species # 4. Therefore,  it was not true
for the defendants to tell this Court that

> "Ms. Hemphill's claim  is ...not pertaining to patent law" pg. 4.

---

[20] The cause of action in this case is Claim 2, **Species # 4.** See Complaint, paragraph 12 and see page 5.
The cause of action in *Hemphill v. Procter & Gamble Company et al* (Hemphill II)
was for patent infringement in the independent **claim 1,  Species # 4.**  As proof, the Complaint details this fact:
> "The asserted claim is claim 1 in the '720 Patent. **Claim 1 is directed to species #4** in Col. 5, ll. 28
> through Col. 6, ll. 58, figures 8 and 9 in the '720 Patent.
> See Document 4, Ex. 1,page 4, ¶2.

Whether these corporate-defendants willfully filed their 'motion to dismiss' with the intent to deceive this court or, they intend to show a flagrant disregard for the decisions and office actions by the PTO, --it is not being honest. Defendants should not be allowed to misrepresent the facts, in their efforts to *choose* the rejected species #1 to avoid infringement, as opposed to the allowed species #4 that determines infringement. It subverts the balances in the PTO.

## CAUSE OF ACTION

The corporate defendants have invariably been permitted to proceed first. In this way, the defendants avert the true cause of action because the Court unknowingly overlooks the Complaint. This is dishonest.

In this instant case, the Complaint clearly stated **claim 2, Species # 4** which is with respect to (Appl. No. 619,684). The products accused of infringing have structure in Species # 4. The defendants secretly averted the true cause of action. Overlooking the Complaint is this Court's '*clear error*'. By <u>*not*</u> *acting on* the Complaint, the court has been "passive". In that way, no Court has *ever* rendered a "fair judgement" or "final judgement" regarding Species # 4 in the United States Letters Patent 4,557,720 in either claim 1 or claim 2 . Any "judgement" or "final judgement on the merits", in either claim 1 or claim 2, that is based on the wrong Species # 1 in the wrong Ser. No. 434,828 <u>does</u> <u>not</u> bar nor replace a fair judgement for claim 2, Species # 4 in Appl. No. 619, 684. Document 15, Opinion page 3. "Judgement on the merits' **must be directed to** Appl. No. 619, 684 regarding Species # 4.

18

**B. RES JUDICATA**

**NUCLEUS OF FACTS**

As this court points out, this case turns on the "nucleus of facts". *"Whether two cases (Hemphill II* and <u>this instant case</u> ) *implicate the same cause of action* (patent infringement - or non-infringement ) *turns on whether they share the same "nucleus of facts"*(Species # 1 and/or Species #4)* Document 15, Opinion page 4.

To determine the facts central to *the invention*, this Court is directed to the undisputed record in the United States Patent and Trademarks Office. See <u>Appendix</u> in Document 9. " A *court may take judicial notice of public records at Document 15,* page 4.

1. Claims 1 and 2 in "the 720 Patent" were claims 5 and 6 during the prosecution phase. Claim 5 and 6 were readable on the distinct Species # 4 (619,684). During the prosecution phase of Species # 1 (Pat. Appl. 434, 828), claim 5 and claim 6 were always safeguarded to protect these claims from material directed to a non-elected species. See paper 7 at App.207A and see Paper 10 at App. 223A.[21]   Ms. Hemphill's *invention* in claim 5 and claim 6 that are now claim 1 and claim 2 in the '720 Patent **are reading the same way**. As proof, compare claims 5 and 6 <u>with </u>claims 1 and 2 in the Hemphill '720 Patent to see and know,  the **claims were never amended**, not at anytime. App. 113A - 114A and 142A. Even during the <u>Reexamination,</u> **there were no amendments** made to the patent. App. 359A-360A. The '720

---

[21] See the communication from the PTO, which writes:
"Claim 1 - 6 are pending in the application.
 Of the above, claims 4-6 are withdrawn from consideration".App. 207A and 223A.
Clearly, the remarks the previous district court points to, were <u>not </u>directed to Species # 4 which is
Ms. Hemphill's invention in the claims 5 and 6 (during prosecution phase) that are now claim 1 and 2 in the '720
patent.

patent was <u>not</u> "reissued". It is <u>not</u> a "reissue" patent.[22]

    2. The PTO decided there were four **distinct species**. The word distinct defines 'each one is <u>not</u> the same' and therefore they do not have the same 'nucleus of facts'. Simply put, **this case turns on the structure that is actually found in Species # 4,** which is <u>distinct</u> from species #1, and the above public record in the PTO established this fact.

        **Species # 1 has  three** components or portions **in an outer housing.** (Ser. No. 434,828).

        **Species # 4 has two** components or portions **as outer housing.** (Appl. No. 619,684)


    3. Neither Species # 1 nor Species #4 had structure such as a stick or wire. The previous court  went outside the '720 Patent to find *additional* structure so as to enter the vaginal **cavity** and by doing so, the district court widens the scope. It is 'new material'. [23]  Therefore, the previous district court is establishing the **range of equivalents** *'at the time of infringing',* which the Federal Circuit  affirms and the Supreme Court was notified *via* writ of certiorari.

> "[t]he Supreme Court does not limit the doctrine of equivalents "to equivalents that are disclosed within the patent itself, reasoning that the "proper time for evaluating equivalency....is at the time of infringement, not at the time the patent was issued." *Warner-Jenkinson* 117 S.Ct. 1040 *Festo Corp. v. Shoeketsu Kinzoku Kogyo Kabushiki* 234 F3d. 558 (Fed. Cir. 2000) 566.

Therefore, it is well understood, that the *inclusion of the additional structure* from the 1994 and 1993 dictionaries shall not  deny nor ignore,  the *actual* or *real* structure that was  *already in*

---

[22]  There is no prosecution history estoppel. "Reissue" implies changes or mistakes or amendments, which <u>does</u> <u>not</u> <u>exist</u>. The '720 Patent was reexamined but it was not "reissued".

[23] As this Court points out in  the opinion on page 2,  the Hemphill '720 patent describes *many uses* for the vaginal **area**, because <u>Reexamination</u> has proven:  "[t]he way the consumer makes use of a vaginal swab is entirely up to them. See App. 297, 302, 307A.  "and statements made during reexamination proceedings "are relevant prosecution history when interpreting claims." <u>E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.</u>, 849 F.2d. 1430, 1439 7USPQ2d 1129, 1136 (Fed. Cir. 1988), <u>cert. denied</u>, 488 U.S. 986 (1988).  See Hemphill v. Procter & Gamble No. 03-1463, 2004 WL 74620 (Fed. Cir. Jan 15, 2004) at <u>Claim Construction</u>  <u>Discussion</u>.

Species # 4 (Appl. No. 619, 684) which the PTO allowed as early as 1985 and the 1998
Reexamination confirmed.

    4.   Undeniably, <u>Reexamination confirmed</u> structure that is actually found in the

Species # 4. [24]    <u>Reexamination</u> established the grounds or basis for this Court to find for

infringement concerning the accused devices.

> The PTO determined:
>
> **"prior art has structure that may read on claim 2 such as a core member
> surrounded by a layer of porous material, an outer housing** and housing
> means with 2 positions (one position that protects the core member and another
> position that exposes the core member for use). App. 306A.
>
> The PTO decided:
>
> **"prior art did not disclose the housing means of Hemphill** and does not
> disclose the structure that could be considered equivalent to the housing means of
> Hemphill . *In re Donaldson Co.*, 16F.3d. 1189, 29 (fed. Cir. 1994)." App. 310A


    5.  Structures that are central to *the invention* are found in Species #4.

In claim 2, the PTO is telling the Court to **look to the <u>structures</u> in the '720 patent** *citing*

***In re Donaldson Co.,*** 16F3d. 1189, USPQ 2d 1845 (Fed. Cir `994). App. 310A.

Courts *follow this rule of law,* 35 U.S.C. § 112 , ¶ 6, which provides in pertinent part :

> "An element in a claim for a combination may be expressed as a means or step for
> performing a specified function without the recital of structure, material, or acts in
> support thereof, and **such claim shall be construed to cover** the **corresponding**

---

[24] See an <u>outer housing</u> in prior art Bower 4,159,718 patent (two sheets of a thin plastic material...paper
tubular section) at Col. 1, ll. 29-31, and see ("..rectangular sheets ..") at Col. 1, ll. 57-58. App. 197A.
        The prosecution history describes **a core member** in prior art Bower 4,159,718 ("..rectangular sheets ..")
at Col. 1, ll. 57-58, App. 197A, as well as, prior art Fielding 3,731,682 ("string or cord") in Col. 4, ll.35-40, App.
169A
        See Reexamination confirms a <u>core member</u> as flexible sheet via prior art '567: ("...may comprise a fluid
impermeable sheet material such as polyethylene or polypropylene cellophane or other similar films"). Col. 4, ll.5-
12. App. 331. Reexamination <u>confirmed</u> claim 1 and claim 2 . App. 360A.

structure, material, or acts described in the specification and equivalents thereof."
AA 311

Now, it is reasonable for this Court to simply clarify 'a fairly rigid core member' but most importantly, identify "an annular base that is fitting within the annular band" which is the *housing means* fitting within the outer housing in claim 2, Species # 4.   In fact, the PTO has already accomplished this *major feat for the Court*, *via* Reexamination. See App. 305A - 306A and see App. 309 - 311.[25]   Now, *these facts above are enough to raise a right to relief above the "speculative" level.*   See Document 15, Opinion at page 3.


## ISSUES ARE NOT TO BE RE-LITIGATED.

There is no reason to "re-litigate"   *the meaning*   for  claim terms regarding Species # 4. See Complaint paragraph 12. By keeping the  same *meaning* for the claim terms, it refutes the res judicata motion about  "re-litigation".

---

[25] The '720 patent describes 'fairly rigid core member ' in  Claim 2, Species # 4 as core 102 (flexible material) at Col. 5, ll. 36-37
and absorbent material 104 at Col. 5, ll. 29-31
is secured to core 102 but **does not cover up annular band 106 Col. 5, ll. 36-38**
which is **extremely compact** Col. 3, ll. 16-18.
**solid** or hollow at Col. 5, ll. 34-35,
segmented or **one piece** unit at Col. 2, ll. 6-7
with **an annular base 106  of core 102 at Col. 5, ll.32-33, is housing means in claim 2,**
fitting within an annular band Col. 5, ll. 44-45.
"both portable and disposable and easily carriable and usable" at Col. 3, ll. 16-18.
Reexamination confirms a <u>core member</u> as flexible sheet via prior art '567:  ("...may comprise a fluid impermeable sheet material such as polyethylene or polypropylene cellophane or other similar films"). Col. 4, ll.5-12. App. 331.

## NO OPPORTUNITY BEFORE AN APPROPRIATE TRIBUNAL

The Court must provide the proper forum for 'fairness' and 'justice'. Courts <u>do not</u> dismiss a Complaint, especially when it appears Ms. Hemphill can prove facts to support her claim which entitles her to relief. Fed. R. Civ Pro. 12 (b). See *Reynolds v. US Capitol Police BD.* 357 F. Supp. 2d. 2, 8 (D.DC. 2004) . The Plaintiff is entitled to a fair opportunity to *prove* her case *too*, but the courts unfairly deny any/all hearings <u>and</u> require the Plaintiff to *disprove* dishonest 'motions to dismiss'   Each and every request for a hearing was denied so that the Complaints for patent infringement in the claims 1, and 2 regarding **Species # 4 have <u>not</u> been heard.** These irregularities deny a fair opportunity. Therefore,

1. It shall be well understood, Ms. Hemphill <u>did</u> <u>not</u> <u>sue</u> McNeil- PPC, Inc. The previous district court permitted Mc Neil-PPC, Inc. to substitute. The previous district court did not correctly begin the proceedings to determine literal patent infringement in claim 2, but rather incorrectly began the proceedings by allowing a summary judgement motion by McNeil-PPC Inc. This defendant was a 'false guide', giving bad directions to mislead the previous district court judge to the wrong Species # 1 in the wrong Ser. No. 434, 828. The case was closed prematurely, depriving Ms. Hemphill of her fair opportunity to prove her Complaint for literal patent infringement in Species # 4 in Appl. No. 619, 684.   It is not a fair opportunity, when in fact, there **is** "no opportunity".

2. In *Hemphill v. Procter & Gamble Co.* (*Hemphill II*), the Plaintiff clearly stated the cause of action for claim 1, species #4. These corporate defendants diverted the attention of the previous district court *away from* Species # 4 and *back to* Species # 1 via *collateral estoppel*. This is cheating. Therefore, in this Court's memorandum opinion on page 4, saying that 'Ms. Hemphill could have raised the instant allegations (claim 2, species # 4) in the prior

23

suit'—is deluded.    **This Court now knows, Ms. Hemphill has repeatedly requested species #4 in each and every action.**

3. Here, in this instant case, the clear intent of these corporations is to avoid the cause of action for patent infringement in **claim 2, Species #4**. The 'subtlety' in the misrepresentations made to this Court interfered with "due process". The 'motion to dismiss' is misleading. This Court should have *denied any motions to dismiss or at least postponed the disposition until the trial on the merits was complete.* See *Brinco Mining LTD. v. Federal Ins. Co.* 552 F. Supp. 1233, 1237 (1982):"Before discussing the corporate defendant's grounds for dismissing this action this Court should clarify what it views as the gravamen of the plaintiff's suit."

This Court is mindful that the only party in these proceedings having a United States Letters Patent with respect to the accused products, is Ms. Hemphill. She is the only person in this action, that has actually been through the patent process in the United States Patent and Trademark Office regarding these accused products. Ms. Hemphill has *earned* the right to *prove* her case for patent infringement. Through these entire proceedings, it should be obvious to this Court that the corporations, through their attorneys, intend to gain the intellectual property by deluding the courts.

Although the system is not perfect, the adjudication process must be fair. [26] The court is reminded that "patent infringement" is a white collar term for "stealing". In an effort to gain Ms. Hemphill's intellectual property, the corporate defendants are not being truthful with this Court. It is clear, the Rule 12 (b)(6) motion (res judicata), was filed with the intent to deprive both, the Court of its privilege and sworn duty to uphold and **enforce** the Constitution and to deprive Ms. Hemphill of her intellectual property, as well as, her constitutional right to jury trial.

---

[26]    Since March 1999 to date, there have been no hearings of any kind. There were no oral arguments, nor, any face to face communication with any federal judge making "judgements" or "final judgements". There was no jury trial so that 'the adjudication process' was less than honest and it is not fair.

Thus, the only party benefitting from the deceitful measures are the defendants.

As an American citizen, Ms. Hemphill is entitled to prove her case before a jury at trial. Ms. Hemphill made the jury demand. Ms. Hemphill did not waive any of her rights. See Fed. R. Civ. Pro., Rule 38(d). Now, this Court has unlimited power to entertain an independent action to  OPEN THIS CASE.[27]


## ANALYSIS

ACCUSED PRODUCTS

1. Any corporate defendant, that would knowingly, provide the Court, with the "wrong patent application" and direct the Court's attention to the "wrong Species" in an effort to prove "non- infringement" should not have the Court's confidence to produce a sample of the products accused of infringing. Therefore, the Plaintiff has no way of knowing **if**, or **what** products were *really* before the previous court, **if any**.[28]   In this case, this Court has not allowed any exhibits or samples to be entered into evidence. '[T]he accused products at issue in the current case...are not established to be identical to the accused products at issue in the lawsuit respecting claim 1'. See Document Number 7, page 9-10. Moreover, the first step in the infringement analysis must be completed first and before any comparisons are made to the accused products in the second step.

---

[27] See Fed. R. Civ. Pro.  Rule 38) **Jury Trial of Right:**
a) **Right Preserved.** The right of a trial by jury ...**shall be preserved.**
b) **Demand.** Any party may demand a trial by jury of any issue triable of right by a jury...such demand may be indorsed upon a pleading of the party. *The Complaint made the jury demand.* The Clerk of Court designated this case for Trial by Jury pursuant to Fed. R. Civ. Pro. Rule 39(a).

[28] In *Hemphill II*, the previous district court *carried-over* the terms from claim 2 into claim 1 *via collateral estoppel* . There is no way to know if a sample product or advertisement in *Hemphill v. McNeil-PPC, Inc.* was *carried over* as well.

2.  The accused products are <u>not</u> marketed as "sanitary napkins" but rather, they have other names such as 'maxi-pads', 'mini-pads' 'ultra thins' etc..  These products accused of infringing are <u>not</u> "sanitary napkins" in the prior art **because they behave (the way they absorb) and function (the way they protect) like a vaginal swab.**  The accused products are "new" and "improved" which explains why the Complaint properly refers to them as "feminine care products" No such labeling appears on any of the packaging of  Always, Kotex and Poise with the name "sanitary napkin".

3. This Court 'jumps to a conclusion' about "olden  sanitary napkins".  This Court denied Ms. Hemphill's fair opportunity to show that the accused products,  are in fact, vaginal swabs in Species # 4 (in Appl. No.  619,684). The whole purpose for holding proceedings in a court of law,  is to  determine whether the accused products are in fact vaginal swabs in species #4  or, the prior art sanitary napkins. [29]    A vaginal swab made structural improvements and *prevails over,* the sanitary napkin in the prior art.  See Reexamination Certificate in  Document 1, Ex. B. The experts in the PTO, who are  qualified to **make the distinctions,** already evaluated the relevant patents during the 1998 Reexamination.  The Reexamination in the  PTO is indisputable evidence which rises above the 'speculative' level about what we 'think' or 'assume' these accused products are, as opposed to what the experts in the PTO ***know***, having analyzed the relevant patents.  See the Factual Background above (Appl. No. 619,684).  See the above "Nucleus of Facts".  Now, *this Court must draw all reasonable inferences in the plaintiff's favor ...and the facts above are  enough to raise a right to relief above the speculative level.*  See Document 15, Opinion at page 3.

---

[29] At the time for invention, those olden sanitary napkins were in the marketplace causing leaking, soiling, odors, wetness, perspiration  etc.   These corporate defendants had to make changes *to become* like a vaginal swab. The way the vaginal swab behaves (the way it absorbs) and the way if functions  (two positions for the outer housing and housing means to protect the unit from danger, risk **and** loss) is unlike the olden sanitary napkin. It is for this reason, the corporate defendants have enjoyed the *improvements* made in a vaginal swab.

**CONCLUSION: Fed. R. Civ. Pro. 60 (b) should be GRANTED.**

Respectfully submitted,

*Allegra Hemphill*
/s/
_____

Allegra Hemphill
4902 3rd Street NW
Washington, DC 20011
(240) 361 - 8699

**Certificate of Service:**
**By US Mail (Postage Paid), to:**

*Kimberly Clark Corporation*
Kramon & Graham, PA
One South Street, Suite 2600
Baltimore, Maryland 21202
attn. James Ulwick,
　　Aaron Raskas

*Procter & Gamble Corporation*
Jones Day
51 Louisiana Avenue NW
Washington, DC 20001
attn.: Blaney Harper

I hereby certify that on February 1, 2008,
this document was caused to be served upon the parties named on this page
at the addresses listed and by the means stated.

*Allegra Hemphill*
/s/
_____

Allegra Hemphill

27

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALLEGRA D. HEMPHILL, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| vs. | * | Civil Action No. 1:07cv1236 **RMC** |
| | * | |
| KIMBERLY- CLARK CORPORATION | * | |
| and | * | |
| | * | |
| PROCTER & GAMBLE COMPANY | * | |
| | * | |
| Defendant(s). | * | |

**********************************************************************

## PROPOSED ORDER

For the reasons stated in the <u>Plaintiff's Federal Rules of Civil Procedure Rule 60(b)</u> <u>Motion.</u> it is hereby,

**ORDERED,** that Plaintiff's <u>Federal Rules of Civil Procedure Rule 60(b) Motion is</u> **GRANTED.**

**SO ORDERED.**

Respectfully submitted,

Date                                          _____

UNITED STATES DISTRICT COURT JUDGE